EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Ismael "Titi" Rodríguez Ramos, como Candidato a la Alcaldía de Guánica por el Partido Popular Democrático, Precinto 048 de Guánica<br><br>Peticionario<br><br>v.<br><br>Comisión Estatal de Elecciones, a través de su Presidente, Hon. Francisco J. Rosado Colomer; Roberto Iván Aponte Berríos, como Comisionado Electoral del Partido Independentista Puertorriqueño; Héctor J. Sánchez Álvarez, como Comisionado Electoral del Partido Nuevo Progresista; Gerardo A. Cruz Maldonado, como Comisionado Electoral del Partido Popular Democrático; Juan Manuel Frontera Suau, como Comisionado Electoral del Partido Proyecto Dignidad; Olvin Valentín Rivera, como Comisionado Electoral del Partido Movimiento Victoria Ciudadana; María J. Ruiz Ramos candidata a alcaldesa de Guánica por el Partido Independentista Puertorriqueño; Santos "Papichy" Seda Nazario candidato a alcalde de Guánica por el Partido Nuevo Progresista; y Edgardo Cruz, ciudadano que promovió su nombre por nominación directa<br><br>Recurridos<br>_____<br><br>Edgardo Cruz Vélez, como candidato a la Alcaldía del Municipio de Guánica bajo la modalidad de nominación directa<br><br>Recurrido<br><br>v.<br><br>Ismael "Titi" Rodríguez Ramos, Candidato a la Alcaldía de Guánica por el Partido Popular Democrático<br><br>Peticionario<br><br>Comisión Estatal de Elecciones, representada por su Presidente, Francisco Rosado Colomer; Roberto Iván Aponte Berríos, como | Certificación Intrajurisdiccional<br><br>2021 TSPR 03<br><br>205 DPR _____ |

Comisionado Electoral del Partido Independentista Puertorriqueño; Olvin Valentín, como Comisionado Electoral del Movimiento Victoria Ciudadana; Gerardo A. Cruz Maldonado, como Comisionado Electoral del Partido Popular Democrático; Edwardo García Rexach, como Comisionado Electoral del Proyecto Dignidad; Héctor J. Sánchez Álvarez, Comisionado Electoral del Partido Nuevo Progresista, María J. Ruiz Ramos, candidata a la alcaldía de Guánica por el PIP y Santos Seda Nazario, candidato a alcalde de Guánica por el PNP

Recurridos

Número del Caso:    CT-2021-01
                    CT-2021-02


Fecha:  12 de enero de 2021


Abogado de la parte peticionaria:

Lcdo. Lind O. Merle Feliciano


Abogados de las siguientes partes recurridas:

**Comisión Estatal de Elecciones**
Lcdo. Jason Caraballo Oquendo
Lcdo. Félix R. Passalacqua Rivera

**Comisionado Electoral del
Partido Nuevo Progresista**
Lcdo. Francisco González Magaz

**Comisionado Electoral del
Partido Popular Democrático**
Lcdo. Jorge Martínez Luciano
Lcdo. Emil Rodríguez Escudero

**Comisionado Electoral del
Partido Independentista Puertorriqueño**
Lcdo. Juan M. Mercado Nieves

**Candidato por el Partido Nuevo Progresista
a la Alcaldía del Municipio de Guánica**
Lcdo. Homero González López

**Sr. Edgardo Cruz Vélez**
Lcdo. Juan Antonio Corretjer Russi


Materia: Derecho electoral: en los votos por nominación directa prevalecerá la intención del elector respecto al nombre del nominado sobre la lectura que registre la máquina de escrutinio electrónico.


Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Ismael "Titi" Rodríguez Ramos, como Candidato a la Alcaldía de Guánica por el Partido Popular Democrático, Precinto 048 de Guánica<br><br>Peticionario<br><br>v.<br><br>Comisión Estatal de Elecciones, a través de su Presidente, Hon. Francisco J. Rosado Colomer; Roberto Iván Aponte Berríos, como Comisionado Electoral del Partido Independentista Puertorriqueño; Héctor J. Sánchez Álvarez, como Comisionado Electoral del Partido Nuevo Progresista; Gerardo A. Cruz Maldonado, como Comisionado Electoral del Partido Popular Democrático; Juan Manuel Frontera Suau, como Comisionado Electoral del Partido Proyecto Dignidad; Olvin Valentín Rivera, como Comisionado Electoral del Partido Movimiento Victoria Ciudadana; María J. Ruiz Ramos candidata a alcaldesa de Guánica por el Partido Independentista Puertorriqueño; Santos "Papichy" Seda Nazario candidato a alcalde de Guánica por el Partido Nuevo Progresista; y Edgardo Cruz, ciudadano que promovió su nombre por nominación directa<br><br>Recurridos | CT-2021-1<br><br>cons. con<br><br>CT-2021-2 | Certificación Intrajurisdiccional |
| Edgardo Cruz Vélez, como candidato a la Alcaldía del Municipio de Guánica bajo la | | |

modalidad de nominación directa

Recurrido

v.

Ismael "Titi" Rodríguez Ramos, Candidato a la Alcaldía de Guánica por el Partido Popular Democrático

Peticionario

Comisión Estatal de Elecciones, representada por su Presidente, Francisco Rosado Colomer; Roberto Iván Aponte Berríos, como Comisionado Electoral del Partido Independentista Puertorriqueño; Olvin Valentín, como Comisionado Electoral del Movimiento Victoria Ciudadana; Gerardo A. Cruz Maldonado, como Comisionado Electoral del Partido Popular Democrático; Edwardo García Rexach, como Comisionado Electoral del Proyecto Dignidad; Héctor J. Sánchez Álvarez, Comisionado Electoral del Partido Nuevo Progresista, María J. Ruiz Ramos, candidata a la alcaldía de Guánica por el PIP y Santos Seda Nazario, candidato a alcalde de Guánica por el PNP

Recurridos

Opinión del Tribunal emitida por el Juez Asociado señor Kolthoff Caraballo

> "[A]l evaluar un voto debe ser norma irreducible la de evaluarlo con el mayor respeto a la voluntad del elector y con el óptimo esfuerzo por salvar su intención, si ésta encuentra apoyo en la inteligencia

aplicada al examen de la papeleta."[1].

En San Juan, Puerto Rico, a 12 de enero de 2021.

En estos casos debemos evaluar, en primer término, si con el fin de salvaguardar la intención del elector guaniqueño, corresponde adjudicar las papeletas que no incluyeron el nombre completo del Sr. Edgardo Cruz Vélez (señor Cruz Vélez) para el cargo de alcalde, según contempla la ley electoral para el voto por nominación directa.

En segundo término, y como secuela de la exigencia del ordenamiento electoral, debemos dilucidar si, en los casos donde el elector guaniqueño tuvo interacción con la máquina de escrutinio electrónico, se deben adjudicar las papeletas que no contienen la marca dentro del rectángulo al lado de donde los electores escribieron el nombre del señor Cruz Vélez o alguna de sus variantes.

En el caso ante nuestra consideración aconteció que, en la contienda por la alcaldía de Guánica, los dos candidatos de los principales partidos políticos tuvieron una contienda cerrada con un resultado preliminar de menos de 100 votos, por lo que conforme al Art. 10.8 del Código Electoral, *infra*, la CEE tenía la obligación de celebrar un recuento. Sin embargo, ante la necesidad del conteo manual, se reflejó que el señor Cruz Vélez contaba con una cantidad sustancial

---

[1] <u>Suárez Cáceres v. Com. Estatal de Elecciones</u>, 176 DPR 31, 73 (2009).

de votos por nominación directa. Atendamos los hechos de estos casos.

I

**A.    CT-2021-1**

El 11 de diciembre de 2020 hubo un desacuerdo entre los comisionados electorales de los partidos políticos. La pugna era respecto a la forma en que la CEE debía adjudicar los votos por nominación directa o *write-in* para el Precinto 048 del Municipio de Guánica. Los comisionados electorales del Partido Nuevo Progresista (PNP) y del Partido Popular Democrático (PPD) estaban a favor de que el voto se adjudicara conforme a la literalidad del Art. 9.10(3) del Código Electoral, *infra*. Es decir, plantearon que, para que el voto se considerara válido, el elector tenía que haber escrito el nombre completo de la persona en la columna de nominación directa, más hacer una marca en el recuadro al lado del nombre que escribió.

Al contraste, los comisionados electorales del Partido Independentista Puertorriqueño (PIP), del Movimiento Victoria Ciudadana (MVC) y del Proyecto Dignidad (PD), aludieron a los acuerdos previos para no limitar la adjudicación del voto a la escritura del nombre completo de la persona nominada directamente. Además, argumentaron sobre la aprobación y enmiendas que sufrieron varios cuerpos reglamentarios y puntualizaron nuestros pronunciamientos

relacionados a la intención del elector como el criterio rector por ser la esencia del derecho al voto.

Ante el desacuerdo, el 14 de diciembre de 2020 y mediante la *Certificación de Desacuerdo-Resolución* (Resolución CEE-AC-20-546), el presidente de la CEE determinó que la intención del elector debía prevalecer. Expuso que, según las definiciones provistas por el Código Electoral, estas papeletas no son mal votadas ni nulas. Además, recalcó que en las *Reglas y criterios de adjudicación manual,* infra, los comisionados electorales acordaron una serie de representaciones de lo que constituiría un voto válido para la adjudicación del sufragio. De este modo, y en lo pertinente, la Resolución CEE-AC-20-546 identificó y estableció 64 nombres bajo los cuales se podía asociar y, por ende, adjudicar votos por nominación directa a favor del señor Cruz Vélez.[2]

---

[2] *Certificación de Desacuerdo-Resolución* (Resolución CEE-AC-20-546), Apéndice, *Alegato* del peticionario, págs. 9-11. A continuación un desglose de los nombres identificados en la Resolución CEE-AC-20-546:

| | | | |
|---|---|---|---|
| E Cruz | Edgar Cruz | Edgaro Cruz | Egando Cuz |
| E. Cruz | Edgard Cruz | Edgerdo Cruz | Egardo Cruz |
| Ecgla Cruz | Edgarda Cruz | Edgordo Cruz | Egdando Cruz |
| Eclga Cruz | Edgardo | Edgrado Cruz | Eggardo Cruz |
| Ed. Cruz | Edgardo C. | Edgraydo Cruz | Egerdo Cruz |
| Edardo Cruz | Edgardo Cos | Edgrdo Cruz | Egurdo Cruz |
| Edargo Cruz | Edgardo Cru | Edguardo Cruz | Egzido Cruz |
| Edcerdo Cruz | Edgardo Cruz | Edgudo Cruz | Ejgardo Cruz |
| Edg Cruz | Edgardo Cruz Velez | Edjardo Cruz | Elgardo Cruz |
| Edgad Cruz | Edgardo Cuiz | Edjundo Cruz | Elgnd Cruz |
| Edgado Ciuz | Edgardo Cur | Eduardo Cruz | Engodo Cruz |
| Edgado Cruz | Edgardo Cuz | Eduardo Cruz Velez | Esgado Cruz |

Inconforme, el Sr. Ismael "Titi" Rodríguez Ramos (peticionario), candidato a la alcaldía de Guánica por el Partido Popular Democrático, acudió con un recurso de revisión judicial al Tribunal de Primera Instancia para impugnar la Resolución CEE-AC-20-546. Allí, señaló que el presidente de la CEE erró al determinar posibilidades de nombres, iniciales y apodos en la adjudicación de papeletas por estar en contravención con el Código Electoral y adujo que la manera en que su determinación atiende la voluntad del elector obliga a colocarse en la posición del elector para adivinar por quién tuvo la intención de votar. Finalmente, el peticionario aseguró que el presidente de la CEE declaró inconstitucional parte del Código Electoral cuando éste tenía la obligación de aplicar el mandato expreso del Legislador.

El presidente de la CEE y el PD solicitaron la desestimación del recurso de revisión judicial y fundamentaron su posición en que la intención del elector es un precepto de estirpe constitucional que opera por encima de requisitos de forma en cuanto al voto. Amparado en los mismos argumentos, el peticionario se opuso sin éxito a las mociones dispositivas presentadas, pues el 23 de diciembre de 2020 el Tribunal de Primera Instancia notificó una

| Edgaldo | Edgardo CZ | Edugado | Esgardo |
| Edgaldo Cruz | Edgardo Guz | Eg. Cruz | Esgardo Cruz |
| Edgando | Edgarlo Cruz | Egad Cruz | Gdgardo Cuiz |
| Edgando Cruz | Edgaro | Egado Cruz | Wgardo Cruz |

*Sentencia* en la que desestimó el recurso de revisión judicial.

El foro primario reconoció en el dictamen que, si bien el presidente de la CEE se aisló del texto de la ley, en su proceder realmente armonizó las disposiciones del ordenamiento electoral y nuestras expresiones e interpretaciones respecto a la intención del elector. Por lo tanto, entendió que el presidente de la CEE actuó conforme a las facultades delegadas por ley.

Divergente, el peticionario solicitó nuestra intervención por entender que el presidente de la CEE ignoró el mandato expreso de la ley por consideraciones de la intención del elector y que el foro de instancia erró al reconocerle la facultad para declarar la inconstitucionalidad de un articulado del ordenamiento electoral con el fin de permitir la aplicación de una regla que claramente es conflictiva.

B.    **CT-2021-2**

El mismo día en que el presidente de la CEE emitió la Resolución CC-AC-20-546, hubo una reunión para atender los votos por nominación directa que no contenían la marca en el recuadro que se encuentra al lado del espacio para escribir el nombre de la persona a ser nominada, en específico, el señor Cruz Vélez.

Los comisionados del PNP y PPD reiteraron que los votos por nominación directa serían válidos si, además de tener el nombre completo, el elector realizó la marca válida que

requiere el ordenamiento electoral. Los demás partidos políticos estuvieron en contra de esa postura. El comisionado electoral del PIP expuso que las *Reglas y criterios de adjudicación manual,* infra, no exige la marca para adjudicar los votos por nominación directa. Por su parte, el comisionado electoral de MVC manifestó que las marcas válidas es un requisito para que la máquina de escrutinio electrónico pueda reconocer el voto y entendió que exigir marcas para validar los votos por nominación directa derrota la intención del elector y la esencia misma del voto. Finalmente, el representante electoral de PD, en esencia, coincidió con los planteamientos del PIP y MVC, pero enfatizó en que la exigencia de la marca era una limitación excesiva al sufragio.

Trabado el acuerdo, el 15 de diciembre de 2020 el presidente de la CEE emitió la *Certificación de Desacuerdo-Resolución* (Resolución CEE-AC-20-547) para resolver lo siguiente:

> El Código Electoral establece en sus méritos de votación la interacción del elector con la máquina. Presumiendo que si la marca estaba ausente la máquina debió alertar al elector de que estaba votando en blanco o mal votado y aun así el elector oprimió el botón de "votar". Sin embargo, en la Unidad 77 no es así porque no hay tal interacción de la máquina con el elector.
>
> Para que el voto sea igual, se puede concordar con el Segundo Partido [PPD] para que sea atendido siempre de la misma forma durante un recuento se adjudique el voto del elector.
>
> No puede ser que, en caso de que se reciba un voto mal ejecutado, y otros, por el mero hecho de que no haya ocurrido un recuento lo obvie. Eso hace que el voto no

tenga igual peso porque no se adjudica de la misma forma.

Siendo consistente con sus dictámenes, el Presidente decide que **en aquellos casos en que hubo interacción del elector con la máquina, los votos sin marca no se adjudicarán. No siendo este el caso de la Unidad 77 de la JAVAA, ya que no hubo la oportunidad de reevaluar la interacción con la máquina, los votos de nominación directa sin marca s[í] se adjudicarán al candidato correspondiente en la Unidad 77.** (Énfasis suplido).[3]

Discrepante, el señor Cruz Vélez acudió con un recurso de revisión judicial ante el Tribunal de Primera Instancia para impugnar aquella parte de la determinación del presidente de la CEE relacionada a que, en los casos en que el elector interactuó con la máquina de escrutinio electrónico, no se adjudicarían los votos por nominación directa si, además, no tenían la marca correspondiente.

El peticionario solicitó la desestimación del recurso cimentado en que el foro primario debía resolver según la Sentencia de 23 de diciembre de 2020 (dictamen recurrido en el CT-2021-1) respecto a que el presidente de la CEE actuó conforme a sus facultades y en armonía con los postulados constitucionales que garantizan el derecho al sufragio.

Atendido los planteamientos de las partes, el tribunal de instancia descartó las mociones dispositivas y así, revocó en parte la Resolución CEE-AC-20-547 para ordenar la contabilización de todos los votos por nominación directa que no tuvieran la marca en el cuadrante de nominación directa y que estuviese escrito por el elector el nombre del nominado, señor Cruz Vélez.

---

[3] *Certificación de Desacuerdo-Resolución* (Resolución CEE-AC-20-547), Apéndice, *Alegato* del peticionario, pág. 23.

Descontento, el peticionario presentó la certificación intrajurisdiccional que nos ocupa para, en síntesis, reiterar que la validez de un voto por nominación directa está supeditado a los requisitos de nombre completo y marca válida, por lo que, ante el incumplimiento con lo anterior, es un voto que no puede contabilizarse según exige el Art. 9.10(3) del Código Electoral, *infra*.

Luego de expedidos y consolidados los recursos, le concedimos a las partes un término para presentar sus argumentos y, ante el cumplimiento con esa orden, estamos listos para resolver.

## II

### A. Recurso de certificación intrajurisdiccional

Una parte puede solicitar o *motu proprio* nosotros expedir una certificación intrajurisdiccional para elevar ante este Tribunal cualquier asunto pendiente que el Tribunal de Primera Instancia o que el Tribunal de Apelaciones atiendan.[4] Sin embargo, debido al carácter extraordinario y discrecional del recurso en cuestión, tenemos que evaluar los siguientes factores: (1) si se plantean cuestiones de interés público que podrían incluir asuntos sustanciales al amparo de la Constitución de Puerto Rico o los Estados Unidos; (2) la etapa en que se encuentra el caso; (3) la urgencia y complejidad de la controversia;

---

[4] Gautier Vega v. Comisión Estatal De Elecciones, 2020 TSPR 131, 205 DPR ___ (2020) citando Pierluisi-Urrutia et al. v. CEE et al., 2020 TSPR 82, 204 DPR ___ (2020); Senado de PR v. ELA, 203 DPR 62 (2019); U.P.R. v. Laborde Torres y otros, 180 DPR 253, 272 (2010).

por último (4) la necesidad que pueda existir de presentar prueba.[5]

Las controversias electorales son consideradas de alto interés público, igualmente cuando la legitimidad de los procesos democráticos y nuestras instituciones es cuestionada.[6] Las circunstancias particulares de este caso ameritan preterir el cauce procesal ordinario para la pronta, oportuna y efectiva intervención y resolución de este Tribunal.[7]

**B.  El derecho fundamental al voto y la intención del elector**

Nuestra Carta Magna estableció que "[l]as leyes garantizarán la expresión de la voluntad del pueblo mediante el sufragio universal, igual, directo y secreto, y protegerán al ciudadano contra toda coacción en el ejercicio de la prerrogativa electoral".[8] Para ese cometido, en el Art. VI Sec. 4 la Constitución delegó en la Asamblea Legislativa "todo lo concerniente al proceso electoral y de

---

[5] Gautier Vega v. Comisión Estatal De Elecciones, *supra*, citando Pierluisi-Urrutia et al. v. CEE et al., *supra*; Senado de PR v. ELA, supra, pág. 70; Rivera Schatz v. ELA y C. Abo. PR. II, 191 DPR 791, 849 (2014); Véanse Art. 3.002s(f) de la Ley Núm. 201-2003, conocida como Ley de la Judicatura de 2003, 4 LPRA sec. 24s(f); Art. 13.1 y Art. 13.3(4) de la Ley Núm. 58-2020 conocida como el Código Electoral de Puerto Rico de 2020, 16 LPRA sec. 4501, et seq. (Código Electoral); Regla 52.2(d) de Procedimiento Civil de 2009, 32 LPRA Ap. V; y la Regla 24s(e) del Reglamento del Tribunal Supremo, 4 LPRA Ap. XXI-B. Véase, también, R. Hernández Colón, *Práctica Jurídica de Puerto Rico, Derecho Procesal Civil,* 6ta ed., LexisNexis Puerto Rico, 2017, Sec. 5623, pág. 574.

[6] Gautier Vega v. Comisión Estatal De Elecciones, *supra*.

[7] Valentín Rivera v. Rosado Colomer, 2020 TSPR 142, 205 DPR ____ (2020).

[8] Art. II, Sec. 2, Const. PR, supra, pág. 283.

inscripción de electores, así como lo relativo a los partidos políticos y candidaturas".[9]

Con tal mandato constitucional como norte, la Asamblea Legislativa aprobó la Ley Núm. 58-2020, conocida como el Código Electoral de Puerto Rico 2020, 16 LPRA sec. 4501, et seq. (Código Electoral). En lo relativo a los derechos y prerrogativas de los electores, el Art. 5.1 del Código Electoral, 16 LPRA sec. 4561, en lo pertinente, dispone:

> Reafirmando el derecho fundamental al voto universal, igual, directo, secreto y protegido contra toda coacción y la garantía de la más clara expresión e intención de la voluntad democrática del pueblo, también reconocemos los siguientes derechos y prerrogativas de los electores:
>
> (1) El derecho a la libre emisión del voto y a **que este se cuente y se adjudique conforme a la intención del Elector al emitirlo**, y según se dispone en este subtítulo.
>
> (2) **La supremacía de los derechos electorales individuales del ciudadano** sobre los derechos y las prerrogativas de todos los partidos, candidatos independientes y agrupaciones políticas.
>
> […]
>
> (4) **La más amplia accesibilidad del Elector, sin barreras y sin condiciones procesales onerosas**, a toda transacción y servicio electoral, **incluyendo el ejercicio de su derecho al voto.**
>
> (5) **El derecho del Elector a que el sistema y los procedimientos electorales estén fundamentados en su más amplia participación y accesibilidad**, tomando en consideración su dignidad y su credibilidad personal, y no en la desconfianza de los Partidos Políticos u otros electores.
>
> […]
>
> (8) **El derecho del Elector** al voto íntegro, al voto mixto, al voto por candidatura y **a la**

---

[9] Art. VI, Sec. 4, Const. PR, *supra*, pág. 440.

>     **nominación directa de personas a cargos públicos electivos bajo condiciones de igualdad en cada caso, conforme se define en esta Ley.**(Énfasis suplido).

Ahora bien, el derecho a que el voto se adjudique conforme a la intención del elector al emitirlo lo regula de forma más específica el Art. 10.10 del Código Electoral, 16 LPRA sec. 4760, al establecer lo siguiente:

>     En la adjudicación de una papeleta, el **criterio rector que debe prevalecer es respetar la intención del elector al emitir su voto** con marcas válidas que **se evaluarán conforme a reglas de adjudicación objetivas y uniformes** utilizadas por los sistemas electrónicos de votación o **escrutinio utilizados por la Comisión.**

>     Esta intención es directamente manifestada por el elector cuando el sistema electrónico evalúa la papeleta marcada en la pantalla de un dispositivo o introducida en el OpScan y avisa al elector de cualquier condición de papeleta mal votada, papeleta con cargos mal votados, cargos votados de menos o papeleta en blanco y el propio elector confirma su intención de que la papeleta sea contabilizada tal y como está o, si por el contrario, desea volver a marcar la papeleta para hacer las correcciones que considere necesarias a su única discreción. Esta intención manifestada por el elector, al momento de transmitir o procesar su papeleta, regirá cualquier determinación sobre la interpretación de su intención al emitir su voto.

>     No será adjudicada ninguna marca hecha por un elector a favor de partido político, candidato o nominado, si la misma fue hecha al dorso de la papeleta o fuera del área de reconocimiento de marca por lo que esta se considerará inconsecuente.

Este articulado refleja que, a pesar de que el criterio rector para adjudicar un voto es el respeto a la intención del elector, ésta parecería estar supeditada a una marca válida que -según definida por la ley- el votante realice en el espacio indicado en la papeleta cuando emita el sufragio que será procesado por la máquina de escrutinio electrónico. A su vez, la interpretación de la intención del elector

parecería estar subordinada a la forma en que éste, luego de que la máquina le advierta de la existencia de alguna deficiencia en la papeleta, aun así, decida tramitar o procesar la papeleta.

Sin embargo, debemos adelantar que un análisis de los artículos pertinentes del Código Electoral, así como de la casuística de este Tribunal relacionada a la intención del elector, nos obliga a concluir que ésta se extiende mucho más allá de la existencia o no de una marca dentro del área de reconocimiento de la máquina de escrutinio electrónico, de reciente introducción en nuestros eventos comiciales. Ciertamente, no descartamos el hecho de que haya votantes que plasmen su voluntad mediante la marca ideal, tal cual lo requiere el Art. 10.10 del Código Electoral, *supra*, pero hay circunstancias que exigen un análisis ulterior de la intención del elector; tal es el caso de los votos emitidos por nominación directa.

Al evaluar la trayectoria jurisprudencial de este Tribunal sobre la intención del elector, ésta es una regla de interpretación para situaciones no anticipadas o imprevistas por el Legislador o donde haya ambigüedad en el ordenamiento jurídico aplicable. Circunstancias donde la aplicación literal de una norma de adjudicación pueda frustrar el derecho al voto y para no anular el sufragio emitido en caso de que el elector no siga alguna instrucción de forma. Veamos.

Desde P.S.P. v. Comisión Estatal de Elecciones, 110 DPR 400 (1980), reconocimos **la supremacía de la clara intención del elector al marcar su papeleta de votación sobre cualquier interpretación literal de un estatuto que pueda frustrar el valor de un voto emitido.** Así, expresamos que:

> [E]l legislador no puede anticipar nunca todas las posibilidades imaginables en el elenco de situaciones en que la dinámica y conducta humanas se desenvuelven. En esas instancias, nuestra misión suprema es salvar --por la preeminencia del derecho envuelto-- aquellas situaciones en las cuales una interpretación literal y rigurosa plantearía graves interrogantes y objeciones de carácter constitucional. Así, cuando el texto legal habla y se configura en términos absolutos, requiere que hagamos un esfuerzo por evitar el choque constitucional, si bien validándolo, pero atemperándolo si posible, y se logra satisfactoriamente la armonía entre el interés gubernamental envuelto y el valor primario del sufragio.[10]

Conforme a estos principios, en ese caso, ordenamos la adjudicación de los votos emitidos a favor de los dos candidatos con las marcas demostrativas de la intención del elector de votar por ellos, aun cuando éstas se colocaron en los encasillados de la columna de nominación directa contiguas a los encasillados en que se encontraban sus candidaturas en la papeleta. También, resolvimos que era válida una papeleta votada por un elector en que, en vez de hacer la marca bajo la insignia del partido de su preferencia y dentro del cuadrante en que la insignia estaba impresa, tal como disponía la ley, la hizo fuera del cuadrante y sobre la insignia.

---

[10] P.S.P. v. Comisión Estatal de Elecciones, 110 DPR 400, 429 (1980).

En aquella ocasión consideramos que la intención del elector de votar por el partido era clara y que **la sustancia debe prevalecer sobre la forma**. Específicamente expresamos que "[l]a medida determinante es si la marca refleja claramente la intención del elector y no el evento fortuito de que la marca fue incorrectamente ubicada".[11]

Luego, en P.P.D. v. Admor. Gen. de Elecciones, 111 DPR 199, 264-265 (1981), ratificamos esa norma porque su aplicación cumple con el mandato constitucional de garantizar el derecho al voto, pero enfatizamos que **la intención del elector debe respetarse cuando ésta sea clara.**

En Santos v. Comisión Estatal de Elecciones, 111 DPR 351 (1981), también validamos la aplicación de la regla de la intención del elector al ordenar la adjudicación de votos por nominación directa en la contienda por la alcaldía de Aibonito. Esto a pesar de que los votos en cuestión no daban la oportunidad al nominado de prevalecer en la contienda. En esta instancia expresamos que, ante las circunstancias particulares, "el criterio aritmético […] no impide que se realice un conteo exacto y correcto que refleje fiel y finalmente la intención y votación de todo el electorado del Municipio de Aibonito. Lo vital es el triunfo de la democracia en todos los lugares de Puerto Rico".[12]

---

[11] P.S.P. v. Comisión Estatal de Elecciones, supra, pág. 432.

[12] Santos v. Comisión Estatal de Elecciones, 111 DPR 351, 356 (1981).

En ese evento comicial, muchos electores creyeron correcto escribir el nombre de su aspirante fuera del espacio provisto para ello en la columna de nominación directa. Este Tribunal consideró que, a pesar de que los electores ubicaron incorrectamente el nombre del nominado, era clara y manifiesta la intención de votar por él. Expresamos que **"[e]s más clara la intención del elector al escribir un nombre que al hacer una cruz"**.[13] Por lo tanto, la CEE debía adjudicar las papeletas en las que apareciera el nombre de 'Francisco Santos', 'Paco Santos', 'Paco', 'Santos', o las iniciales donde claramente se identificara al candidato, aunque estuviera mal escrito o ubicado.[14]

Según expresamos en aquella ocasión, en situaciones como ésta hay que considerar lo siguiente:

> El evento comicial envuelve a una población que excede el millón y medio de **todo tipo de personas, de las más diversas posiciones sociales y condiciones intelectuales y académicas.** Bajo esa óptica, hemos de recordar la admonición constitucional de que '[n]adie será privado del derecho al voto por no saber leer o escribir...', Art. VI, Sec. 4. En su correcta dimensión este postulado puede conllevar, en sus variadas manifestaciones, una prohibición a que se anule el voto por que el elector no siga instrucciones que sólo afectan de manera mínima el interés legislativo que persigue reconocer la verdadera voluntad del elector". (Énfasis suplido).[15]

En <u>Granados v. Rodríguez Estrada V</u>, 127 DPR 1 (1990), entre los asuntos atendidos, resolvimos una controversia respecto a una papeleta votada por nominación directa con

---

[13] <u>Santos v. Comisión Estatal de Elecciones</u>, *supra*, pág. 354.

[14] Íd.

[15] Íd., págs. 356-357.

relación a un candidato postulado bajo la insignia de un partido. En tal caso, en el espacio de nominación directa el elector escribió "José Granados del Río". El candidato reclamó que la intención del elector era votar por José Granados Navedo. Luego de ponderado el asunto, entendimos que, de un examen de la papeleta razonablemente se podía deducir que, la intención del elector fue votar por el señor Granados Navedo. Sobre el particular expresamos:

> El voto en controversia fue emitido en una papeleta municipal ('color amarillo'), marcada bajo la insignia del PNP. Pensar que la intención de este elector fue a los efectos de votar por el Lic. Baltasar Corrada del Río o por Ana María (Ita) Corrada del Río o por un candidato llamado José Granados del Río no nos convence. El primero de los nombrados fue candidato a la gobernación en los pasados comicios, en campaña política que se difundió extensamente a través de todos los medios de comunicación. Los votos por este candidato se emitían en papeletas electorales distintas ('color blanco'). La segunda candidata, pertenece a sexo opuesto y a un partido cuyos ideales son radicalmente opuestos a los que se entienden por 'una cruz debajo de la Palma', por lo que haría difícil creer que este elector quisiese votar por ella al escribir 'José Granados del Río' en la columna de nominación directa. Por último, no existen ningún otro candidato (o persona conocida) con el nombre de 'José Granados del Río'.

> El nombre escrito en la columna de nominación directa, por otro lado, es cónsono con el nombre y primer apellido del candidato que aquí reclama este voto. Imaginarnos, como insin[ú]a la parte demandada en su alegato, que añadir el apellido del Río en el encasillado significó que el elector quiso escoger a ambos candidatos – José Granados Navedo y Baltasar Corrada del Río – para Alcalde de San Juan, (por [e]ste último haber sido el Alcalde incumbente) nos parece insólito.

> Entendemos que **el error cometido por este elector no debe invalidar su voto.** Su intención y preferencia electoral quedó claramente reflejada en la papeleta. **No podemos permitir que una interpretación literal y restrictiva de los estatutos electorales**

**prive a este votante de su franquicia electoral.**
(Énfasis suplido).[16]

C.    **Funciones, deberes y facultades de la CEE y las del presidente de la CEE**

La CEE tiene la responsabilidad de planificar, organizar, dirigir y supervisar el organismo electoral y los procedimientos de naturaleza electoral que, conforme a las normas estatales y federales aplicables, rijan en cualquier votación que se realice en Puerto Rico.[17] Para desempeñar estos deberes tendrá, además y entre otras funciones, cumplir y hacer cumplir las disposiciones y propósitos del Código Electoral; aprobar las reglas y los reglamentos que sean necesarios para implementar las disposiciones del ordenamiento electoral.[18]

En lo que atañe a las facultades y deberes del presidente de la CEE, el Art. 3.8 del Código Electoral, 16 LPRA sec. 4518, postula que éste es la "máxima autoridad ejecutiva y administrativa de la Comisión, responsable de la supervisión de los procesos y eventos electorales en un ambiente de pureza e imparcialidad absoluta." Para ejecutar esta encomienda, y sin que constituya un listado taxativo, el presidente tendrá entre otras facultades y deberes el de:

> (1) Cumplir y hacer cumplir las disposiciones y los propósitos de esta Ley, la Constitución de Puerto Rico y de Estados Unidos de América, de las leyes que ordenen o instrumenten cualquier tipo de proceso electoral o Votación y de los reglamentos electorales

---

[16] Granados v. Rodríguez Estrada V, 127 DPR 1, 86-87 (1990).

[17] Art. 3.2 del Código Electoral, 16 LPRA sec. 4512.

[18] Art. 3.2(1) y (3) del Código Electoral, 16 LPRA 4512(1) y (3).

que, por virtud de ley, sean aprobados por la Comisión y los acuerdos unánimes de los Comisionados Electorales.[19]

Mediante el Art. 9.27(1) del Código Electoral, 16 LPRA sec. 4727, la Asamblea Legislativa le otorgó la facultad a la CEE para reglamentar la manera en que los electores marcarán las papeletas de votación. En lo pertinente, establece lo siguiente:

(1) **La Comisión reglamentará las maneras en que los electores marcarán sus papeletas de votación**. En todo caso, sea en papeleta impresa, en papel o contenida en algún medio electrónico, la manera para marcar la papeleta que se reglamentará **será la más sencilla posible** y permitirá que se pueda emitir el voto íntegro, mixto, por candidatura o **nominación directa**. (Énfasis suplido).

Ahora bien, con el propósito de cumplir con los deberes impuestos por el Código Electoral, la CEE aprobó las reglas y reglamentos que atendieron los procesos comiciales celebrados el pasado 3 de noviembre de 2020. En específico, el 30 de octubre de 2020, se aprobó de manera unánime las *Reglas y criterios para la adjudicación manual de papeletas.* En el preámbulo de este cuerpo de normas, expresamente se dispone que éstas "se utilizarán en la Mesa de Conteo Manual (Unidad 75), **en los colegios 2 y 4 de la Unidad 77 de Voto Ausente y Adelantado por Correo y <u>en cualquier otro colegio que la Comisión determine que se contará de forma manual</u>**."(Énfasis suplido).[20]

---

[19] Art. 3.8(1) del Código Electoral, 16 LPRA 4518(1).

[20] *Reglas y criterios para la adjudicación manual de papeletas* de 30 de octubre de 2020. https://ceepur.org/Elecciones/docs/Reglas%20y%20criterios%20para%20la%20adjudicacion%20manual%20de%20papeletas.pdf (última visita 10 de enero de 2021).

Asimismo, el 10 de noviembre de 2020, se aprobó el *Manual de procedimientos para el escrutinio general y recuento 2020*. De manera introductoria, se establece que el manual se preparó para procurar la transparencia del procedimiento del escrutinio general, "tomando en consideración la naturaleza del Sistema de Escrutinio Electrónico [y] tiene el objetivo de hacer valer lo dispuesto en el Código Electoral y los Reglamentos aplicables".[21]

Ambos cuerpos reglamentarios postulan con meridiana claridad que, al adjudicar un voto en una papeleta, ya sea en un conteo manual o en recuento, el criterio rector que debe prevalecer es respetar al máximo la voluntad del elector al emitir su voto.[22]

Antes de discutir las secciones reglamentarias que regulan el voto por nominación directa, expondremos brevemente las disposiciones del Código Electoral concernientes a este tipo de votación. Además, analizaremos las características y particularidades de este tipo de voto, y su relación con la máquina de escrutinio electrónico.

---

[21] *Manual de procedimientos para el escrutinio general y recuento 2020,* de 10 de noviembre de 2020. https://ww2.ceepur.org/sites/ComisionEE/es-pr/Secretaria/Manuales/Manual%20de%20procedimientos%20para%20el%20Escrutinio%20General%20y%20Recuento%202020.pdf (última visita 10 de enero de 2021).

[22] Sec. 4.1 de las *Reglas y criterios para la adjudicación manual de papeletas* y Sec. 17.1 del *Manual de procedimientos para el escrutinio general y recuento 2020*.

### D. Voto por nominación directa

El voto por nominación directa se reconoce desde la fundación de la Nación Americana y, al presente, los electores de treinta y cinco de los cincuenta estados, además de varios territorios, incluyendo a Puerto Rico, pueden emitir su voto mediante esta forma de votación.[23] Este tipo de voto constituye una gracia legislativa cuando ésta tenga el interés de proveer una alternativa adicional al elector para expresar su voluntad cuando no esté conforme con las candidaturas que los partidos políticos o candidatos independientes han logrado presentar en la papeleta.

Como mencionáramos, en Puerto Rico el Código Electoral confiere al elector el derecho a emitir el sufragio por nominación directa o *write-in*.[24] De manera que una vez concedido, el Estado tiene que extender todas las garantías constitucionales y estatutarias de las prerrogativas de los electores para ejecutar el sufragio mediante este tipo de votación.

Ahora bien, para ejecutar el sufragio, el Art. 9.10 del Código Electoral, 16 LPRA sec. 4710, establece las instrucciones dirigidas al elector sobre cómo utilizar cada una de las papeletas en una Elección General. En lo pertinente a cómo votar por nominación directa en la

---

[23] Ricciani, J., *Burdick v. Takushi: The Anderson balancing test to sustain prohibitions on write-in voting*, 13 Pace L. Rev. 949, 952-954 (1994).

[24] Art. 5.1(8) del Código Electoral, 16 LPRA sec. 4561(8); Rivera Guerra v. CEE, 187 DPR 229, 240 (2012).

papeleta municipal, el Art. 9.10(3) del Código Electoral, 16 LPRA sec. 4710(3), postula lo siguiente:

### CÓMO VOTAR POR NOMINACIÓN DIRECTA

En esta columna puede votar por otra(s) persona(s) distinta(s) a las que aparecen como candidatos(as) en las columnas anteriores de esta papeleta. Para votar por la(s) persona(s) de su preferencia, escriba su **nombre completo** en el encasillado de la columna de nominación directa que corresponda a la candidatura y también debe **hacer una Marca Válida** dentro del rectángulo en blanco al lado de cada nombre escrito.

### HOW TO VOTE FOR WRITE IN CANDIDATES

In this column you can vote for another person(s) different from those listed as candidates in the previous columns of this ballot. To vote for the person(s) of your choice, write their full name on the box of the write-in column that corresponds to the candidacy, and you must also make a valid mark within the blank rectangle next to each written name. (Énfasis suplido).

La exigencia del nombre completo surge también de la definición de "Marca Válida en la Papeleta" del Art. 2.3(55) del Código Electoral, 16 LPRA sec. 4503(55), pero ésta, además, reconoce la posibilidad de otra alternativa. La definición lee como sigue:

(55) "Marca Válida en la Papeleta"- Trazo hecho por el Elector sobre la Papeleta en papel y dentro del área de reconocimiento de Marca que no sea menor de cuatro (4) milímetros cuadrados. Toda Marca hecha fuera del área de reconocimiento de Marca, será inválida y se tendrá como no puesta y, por ende, inconsecuente. Para que un voto sea reconocido tendrá que cumplir con los requisitos y las especificaciones de marca válida. En los casos de nominación directa, se reconocerá como voto aquella nominación directa hecha por el Elector que contenga el **nombre completo** del Candidato **o alternativa, según corresponda al tipo de Votación**, y una marca válida en el área de reconocimiento de marca dentro de la columna de nominación directa en la Papeleta. (Énfasis suplido).

Por otro lado, el Art. 2.3(112) del Código Electoral, 16 LPRA sec. 4503(112), expone la definición de **"Voto por**

**Nominación Directa**" y postula que la validez de este tipo de sufragio

> "consistirá en que el Elector escriba el **nombre de la persona de su preferencia** dentro del encasillado impreso en la Papeleta que corresponda al cargo electivo de su interés en la columna de nominación directa **y haga una marca válida** dentro del cuadrante correspondiente a ese encasillado". (Énfasis suplido).

<u>**Nótese que, contrario al significado legal de "Marca Válida en la Papeleta", la definición de "Voto por Nominación Directa" no requiere que el elector escriba el nombre completo**</u>.

Con relación a los cuerpos reglamentarios aprobados por la CEE, en detalle, la Sec. 5.7.2 de las *Reglas y criterios de adjudicación manual* y la Sec. 18.6(b) del *Manual de procedimientos para el escrutinio general y recuento 2020* regulan los nombres escritos en la columna de nominación directa o *write-in*. Ambos cuerpos normativos disponen exactamente lo siguiente:

> Todo nombre, <u>**aunque esté mal escrito**</u>, en la columna de Nominación Directa o "Write-In" se adjudicará a favor de la persona indicada para el cargo correspondiente del cuadrante donde se escribió. Si dicho cargo impreso fue tachado y sustituido por otro cargo, el voto se adjudicará para la posición expresamente escrita y lo perderá el candidato del partido político bajo el cual votó que corresponda a dicha posición, aun cuando esté escrito fuera de lugar. **Disponiéndose que, para adjudicar el voto al nombre escrito, no será necesario que el elector haga una marca en el rectángulo en blanco al lado del nombre.** (Énfasis suplido).

En la medida que la norma antes citada permite como válido todo nombre, aunque esté mal escrito, parecería no

ser cónsona con las exigencias del nombre completo y marca válida del Art. 9.10(3) del Código Electoral, *supra*. Sin embargo, considerando que las personas con más baja escolaridad están más propensas a cometer errores ortográficos o de cualquier tipo en su escritura, lo anterior contempla una realidad que está perfectamente acorde con lo dispuesto en el Art. VI Sec. 4 de nuestra Constitución en cuanto a que **"[n]adie será privado del derecho al voto** por **no saber leer** o **escribir** o por no poseer propiedad." (Énfasis suplido).[25] Además, es cónsono con lo resuelto en Santos v. Comisión Estatal de Elecciones, *supra*, al amparo de la aplicación de la regla de la intención del elector y la prohibición a coartar el voto de una persona que tenga diversas condiciones intelectuales y académicas.

Paralelamente, es afín con la obligación inexorable que, según el Art. 3.8(1) del Código Electoral, 16 LPRA sec. 4518(1), posee el presidente de la CEE de cumplir y hacer cumplir **todas las disposiciones y propósitos constitucionales, legislativos y reglamentarios que ordenen o instrumenten procesos electorales o de votación.** Igualmente, como autoridad máxima responsable de que los procesos electorales se den dentro de un ambiente de absoluta pureza e imparcialidad,[26] el presidente de la CEE tiene el deber garante de salvaguardar la intención del

---

[25] Art. VI, Sec. 4, Const. PR, *supra*.

[26] Art. 3.8(1) del Código Electoral, *supra*.

elector en la medida en que razonablemente sea posible, según lo exige tal doctrina discutida.

Por último, valga recordar la advertencia que emana de la Exposición de Motivos del Código Electoral de que "el elector es el eje y protagonista del sistema electoral y **debe serlo sin limitaciones ni condiciones procesales que, <u>irrazonablemente menoscaben, limiten o compliquen el ejercicio del voto</u>**.[27]

En esta coyuntura histórica y atípica, es menester resaltar las características y particularidades del voto por nominación directa que emanan del ordenamiento jurídico que rigen los procesos electorales y de sus reglas y reglamentos, además de la jurisprudencia atendida por este Tribunal. En primer lugar, aun cuando el Código Electoral concede al elector el derecho al voto por nominación directa como mecanismo de votación, no hay duda de que éste es todavía un voto bastante atípico en nuestra sociedad.

Por otro lado, existen estadísticas, estudios empíricos e informes que reflejan, aunque cada vez en menor grado, que en Puerto Rico lamentablemente existe todavía un problema de destrezas de lectura y escritura.[28] Así, para el elector cuya intención es votar mediante el mecanismo de nominación directa, esto resulta una complicación pues, contrario a los

---

[27] <u>Gautier Vega v. Comisión Estatal De Elecciones</u>, *supra*.

[28] Véase, *Informe sobre desarrollo humano*, Puerto Rico 2016.<u>https://www.estadisticas.pr/files/Publicaciones/INFORME_DESARROLLO_H UMANO_PUERTO_RICO_1.pdf</u> (última visita 10 de enero de 2021).

candidatos independientes y de los partidos políticos, el ciudadano que procura ser nominado por el electorado y hace campaña para ello, no cuenta con los beneficios que aquéllos tienen de que el votante, al menos, puede apreciar la foto contigua al nombre completo del candidato.[29]

Y es que, cuando se trata del voto por nominación directa y el elector no sepa escribir, ya sea porque desconoce cómo hacerlo o porque su destreza para ello sea limitada, necesariamente tendrá que realizar un trazo que, a su vez, permita a los funcionarios electorales razonablemente entender el nombre o su variante por el cual el votante emitió el sufragio.[30]

Por otro lado, después de cuatro décadas de haber pautado con relación a la norma de intención del elector en Santos v. Comisión Estatal de Elecciones, supra, hoy precisamos comenzar a aplicar los parámetros de tal doctrina a la nueva realidad de un sistema de escrutinio electrónico adoptado recientemente en nuestro sistema democrático.

Como señaláramos, es indudable que del Art. 9.10(3) del Código Electoral surge que existe una relación complicada entre la máquina de escrutinio electrónico y el mecanismo de nominación directa o *write-in*. Pues, según la disposición

---

[29] Rivera Guerra v. CEE, *supra*, pág. 239.

[30] Sobre este particular es preciso tener presente que el trazo de la letra de los electores es personalísimo y los funcionarios tendrán ante su consideración distintas clases de letras o tipos de escritura. Asimismo, la percepción de cada funcionario es un elemento vital para que todos puedan coincidir con que el nombre que escribió el elector con su puño y letra es el que plasmó para el nominado directo y así adjudique el voto.

legal, requerirá que el elector, si no sabe leer, al menos pueda identificar la instrucción propuesta. Notemos, en primer lugar, que la máquina de escrutinio electrónico es capaz de contabilizar la emisión de un voto por nominación directa, pero en realidad no tiene capacidad de adjudicar tal voto a persona alguna. Tal adjudicación, hasta el momento, solo puede realizarse si se lleva a cabo un recuento papeleta a papeleta.

En segundo lugar, en este tipo de voto y sin importar la corrección o no de lo escrito por el elector, si éste no realizó la marca exigida por ley, la máquina de escrutinio electrónico procesará ese voto como uno en blanco o mal votado. Lo anterior, a raíz de que la máquina de escrutinio electrónico está programada para identificar marcas "válidas" y no puede leer la intención del elector al escribir el nombre de la persona propuesta o sus variantes. En ese contexto, es ciertamente beneficiosa al elector la programación de este tipo de máquina, que permite corroborar si en realidad éste desea emitir su voto de la manera en que lo introdujo. Sin embargo, la realidad es que pueden ser múltiples las razones por las cuales un elector emite su voto de la manera que lo hace, aun siendo presuntamente advertido por la máquina de la existencia de algún aparente problema.

Con relación a la mecanización del sistema de votación o las máquinas de votación, citamos con aprobación las

expresiones del Prof. Héctor Luis Acevedo, al explicar lo
siguiente:

> **Los sistemas de votación y su tecnología no son un
> fin en sí mismos,** <u>**sino auxiliares en la misión
> principal de respetar la voluntad del electorado**</u>. En
> el mundo electoral, los detalles mandan. A veces se
> pierde perspectiva de ese principio. Se han adoptado
> sistemas de votación que son más rápidos, pero anulan
> más votos que el anterior. Esa desviación crítica es,
> quizá, la dictadura de la forma sobre la sustancia o de
> la velocidad sobre la integridad del derecho al voto.
> **Los sistemas y las tecnologías son para adelantar las
> causas de la humanidad, no para desviarla de sus
> objetivos básicos.**

> […]

> El Código Electoral de Puerto Rico [al igual que el
> actual] dispone un mandato para 'mecanizar el sistema
> de votación', **lo cual obliga a medir las consecuencias
> sobre el electorado analfabeto y anciano de Puerto
> Rico.**

> […]

> Sobre este tema, es fundamental tener presente las
> siguientes consideraciones:

> - El requisito de igualdad puede ser violado si una
>   parte de la población se ve favorecida o perjudicada
>   frente a otro grupo de población definido, en
>   particular los envejecientes y los menos instruidos.

> - **El requisito de la universalidad del voto y el no
>   imponer el requisito de leer y escribir pueden
>   violarse indirectamente con las tecnologías o los
>   métodos complicados de votación que requieran en
>   términos prácticos un nivel de alfabetismo.**

> - La adjudicación de votos debe superar el presente
>   promedio de validación para que no constituya una
>   confiscación del derecho al voto mediante la
>   invalidación de un porcentaje de votos de la
>   población. Esa situación sería un retroceso
>   impermisible constitucionalmente, pues **la velocidad
>   en contar no puede ir acompañada de la anulación
>   progresiva de la franquicia electoral.** (*A desire for
>   speed is not a general excuse for ignoring equal
>   protection guarantees, Bush v. Gore*).

> - **Las tecnologías son para expandir el derecho al voto
>   no para limitarlo.**

> **El efecto de estos sistemas en nuestros analfabetos y en personas de mayor edad no es un asunto discrecional, sino de impacto constitucional sobre el derecho al voto.**
>
> […]
>
> • La mecanización del sistema de escrutinio de votos debe acogerse este con atención a la misión fundamental de estimular la participación electoral y **respetar la voluntad de los electores al contabilizar los votos fiel y diligentemente.** (Énfasis suplido, énfasis en el original).[31]

Todo lo antes citado cobra una mayor relevancia en consideración a las características y particularidades discutidas del voto por nominación directa. Los retos que representa este tipo de dinámica para la población limitada o carente de destrezas para leer o escribir, además de consideraciones académicas, intelectuales y de edad, entre otras, podría hacer en muchos casos más complicada la interacción con la máquina de escrutinio electrónico al emitir este tipo de voto. En conclusión, es evidente que, dependiendo de la condición y capacidad de cada votante al momento de emitir su sufragio, la interacción con la máquina de escrutinio electrónico pudiera representar distintos retos y complicaciones que resulten en que no puedan seguir necesariamente las instrucciones que se les da. En ese contexto, parecería entonces más lógico y justo evaluar la intención del elector, no por la forma en que interactúa con la máquina, sino por la forma en que plasma esa voluntad en la papeleta.

---

[31] H.L. Acevedo, *La democracia puertorriqueña y su sistema electoral, Puerto Rico y su gobierno: estructura, retos y dinámicas,* Puerto Rico, Ed. SM, 2016., págs. 319-321.

**E. Deferencia de agencia administrativa**

El Art. 13.1 del Código Electoral, 16 LPRA sec. 4841, dispone que los tribunales extenderemos la deferencia judicial a las decisiones de la Comisión Estatal de Elecciones por ser la institución con mayor *expertise* en temas electorales y por ser el responsable de implementar los procesos que garanticen el derecho al sufragio.

Así, merecerá respeto y deferencia judicial la interpretación de un estatuto por el organismo que lo administra y es responsable de su cumplimiento, esto incluye aquellos casos marginales o dudosos, aun cuando esa interpretación no sea la única razonable.[32] Sin embargo, la norma de deferencia judicial no es absoluta. Sobre este particular, hemos expresado lo siguiente:

> Ahora bien, **no cabe hablar de deferencia judicial cuando la interpretación de la agencia afecta derechos fundamentales, resulta irrazonable** o conduce a la comisión de injusticias. Asimismo, cuando la agencia interpreta el estatuto al que está obligada a poner en vigor, **de forma tal que produce resultados contrarios al propósito de la ley, esa interpretación no puede prevalecer.** (Énfasis suplido). [33]

**III**

En sus recursos, con apoyo en la jurisprudencia federal, el peticionario plantea que el Legislador puede eliminar el derecho al voto por nominación directa, sin que ello constituya una violación de los derechos constitucionales. Alude, pues, que la posibilidad de votar

---

[32] Suárez Cáceres v. Com. Estatal Elecciones, *supra*, págs. 78-79.

[33] Íd., pág. 79.

por nominación directa es una prerrogativa estatutaria que el Legislador puede derogar, por lo que también tiene amplia discreción para regular los requisitos de forma que quiera establecer. En otras palabras, y como cita el peticionario, el que puede lo más puede lo menos.

Sin embargo, tal planteamiento elude el punto en controversia. No está en discusión la facultad legislativa para establecer los requisitos de forma que materialicen el derecho al sufragio universal. Ahora bien, lo cierto es que tal facultad regulatoria es para todos los tipos de votos reconocidos en el ordenamiento electoral: el voto íntegro, el voto mixto, el voto por candidatura y la nominación directa de personas, bajo condiciones de igualdad en cada caso. En otras palabras, el legislador ha requisitado no sólo el voto por nominación directa, sino también los demás tipos de votos. Para todos estos tipos de votos, sin importar su estirpe constitucional o meramente estatutaria, en el pasado hemos reconocido la utilización del principio rector de la intención del elector cuando así ha sido necesario con el fin de garantizar el sagrado derecho al sufragio universal de ese elector, que falló en cumplimentar con total exactitud su papeleta electoral.

La pregunta entonces es, siendo que a todos se les imponen requisitos que en ocasiones son incumplidos por el elector, ¿por qué tratar diferente el voto de nominación directa no aplicando el mismo principio de interpretación de lo que fue la intención del elector, para intentar adjudicar

ese voto? Por qué no conseguir, como establece el propio Código Electoral 2020, que el voto "se cuente y se adjudique conforme a la intención del Elector al emitirlo", claro está, siempre que esto sea posible.[34]

Así, esta Curia ha sido consistente en aplicar el principio rector de la intención del elector —primer derecho y prerrogativa reconocido en la ley electoral actual— a todo tipo de voto establecido por el legislador, sin importar su estirpe. En conclusión, en su alegato el peticionario falla al no discutir la razón para no aplicar tal principio rector al voto por nominación directa, ni cita estatuto, reglamento o normativa jurisprudencial alguna que lo prohíba. Así, nos reiteramos en lo ya expresado en múltiples decisiones de que al evaluar un voto debemos hacerlo con el mayor respeto a la voluntad del elector y con el óptimo esfuerzo por salvar su intención, si ésta encuentra apoyo en la inteligencia aplicada al examen de la papeleta.

Por otra parte, el peticionario argumenta que el presidente de la CEE usurpó la autoridad judicial al aplicar el principio de la intención del elector para validar una cantidad sustancial de variantes del nombre del ciudadano Edgardo Cruz Vélez y adjudicar los votos con tales variantes a su favor. Específicamente, señala que el presidente de la CEE no tiene facultad o la prerrogativa de "descartar la letra clara e inambigua de la ley, basado en su opinión en

---

[34] Art. 5.1(1) del Código Electoral, 16 LPRA sec. 4561.

torno a la constitucionalidad de la norma".[35]  Así, concluye el peticionario que "[s]olamente los tribunales pueden pasar juicio sobre la constitucionalidad de determinado estatuto y la doctrina de separación de poderes significa que la función judicial sólo puede ser llevada a cabo por la Rama Judicial".[36]

Contrario a lo que afirma el peticionario, interpretamos que la acción del presidente de la CEE no fue la de descartar texto legal alguno usurpando facultades de los tribunales, sino armonizar distintos textos de la propia ley. Así, es correcta y se encuentra dentro de sus facultades la interpretación que hace el presidente de la CEE con relación al Art. 9.10(3) del Código Electoral, *supra*, la que resulta en armonía con el Art. 10.10 del mismo estatuto, con la definición legal del voto por nominación directa del Art. 2.3(112), y con el derecho a que la voluntad del elector sea respetada en su adjudicación, del Art. 5.1.

En este sentido, es claro que el presidente de la CEE tiene la facultad y el deber de, conforme a su pericia en la materia, intentar armonizar los distintos textos de su ley orgánica, utilizando aquellas reglas o normas administrativas que sirvan tal propósito. En conclusión, descartamos la interpretación del peticionario respecto a que el presidente de la CEE declaró inconstitucional aquella

---

[35] *Alegato* del peticionario, pág. 13.
[36] *Alegato* del peticionario, pág. 13.

parte del Código Electoral relacionada a la instrucción de escribir el nombre completo del candidato en la columna de nominación directa. El análisis expuesto nos lleva a concluir que el presidente de la CEE, como máxima autoridad en temas electorales, lo que hizo fue armonizar la Constitución y el Código Electoral, utilizando como referencia las reglas de adjudicación aprobadas unánimemente por los comisionados electorales de los comicios de 2020.

Como dispusimos en P.S.P. v. Comisión Estatal de Elecciones, supra, aún en los casos donde el texto legal esté configurado en términos absolutos —como es el caso del Art. 9.10(3) del Código Electoral, *supra*—, corresponde hacer un esfuerzo por evitar algún choque constitucional con el valor primario del sufragio, al atemperar el texto en lo posible para armonizar el interés legislativo al establecer determinados requisitos de forma. Tal esfuerzo corresponde no solo a los tribunales, sino a todo aquel funcionario público a quien corresponda el deber de interpretar su ley orgánica en la adjudicación de controversias.

Por último, en el segundo recurso y contrario a lo resuelto por el foro primario, el peticionario entiende que no se deben adjudicar los votos de aquellos electores que, aunque expresaron su voluntad en el espacio provisto para eso en la columna de voto por nominación directa, no marcaron el encasillado facilitado para ese tipo de voto. Esto, porque, según argumenta el peticionario, esos electores interactuaron con la máquina de votación, la que

presuntamente les advirtió de una deficiencia en su voto, y éstos, aun así, decidieron emitirlo. A juicio del peticionario, esto significa que la única intención clara de tales electores es que su papeleta fuera procesada sin haber marcado un candidato específicamente por nominación directa. Entiende que la advertencia que hace la máquina al elector sobre alguna deficiencia es suficiente para invalidar ese voto por faltar una marca. Según expresa, se tiene que concluir que el elector que, luego de dicha advertencia, decide someter y depositar la papeleta ratificó que su intención era mantener dichas deficiencias. Señala el peticionario que esto puede deberse a que el elector quiso emitir un voto en blanco o dañar la papeleta u otras alternativas. De hecho, éste llega a sugerir que, en este caso, al escribir el nombre, pero no la marca en el espacio provisto, el elector guaniqueño pudo expresar que tampoco quería al ciudadano que hizo campaña para nominación directa. No podemos avalar tal pretensión.

En primer lugar, lo que sugiere el peticionario es que esta Curia se aventure a interpretar, no la papeleta del elector que es a lo que se limita la doctrina de la intención del elector, sino su intención al interactuar con la máquina de escrutinio. Como ya hemos dicho, pueden ser múltiples las razones por las cuales un elector pudiera ignorar la advertencia que presuntamente le hace la máquina de escrutinio electrónico de una alegada deficiencia en su

voto. **Pero lo realmente trascendental es lo que finalmente éste expresó en la papeleta.**

En segundo lugar, es menester aclarar que la advertencia que hace la máquina al elector sobre alguna deficiencia al momento de emitir su voto es una programación diseñada en beneficio del elector y no para su perjuicio. Resultaría irónico que lo que está diseñado para asegurar que el elector no invalide su voto, termine siendo un obstáculo para poder evaluar su validez. En otras palabras, la máquina de escrutinio electrónico no tiene el propósito de ser la intérprete última de la voluntad del elector y mucho menos ser impedimento para conocerla.

En tercer lugar, y como hemos señalado en el pasado, no hay expresión más clara que la de escribir el nombre de una persona en la papeleta. En este caso, escribir el nombre del nominado en la papeleta municipal debe ser criterio suficiente para expresar de forma inequívoca la intención de votar por esa persona. ¿Cómo entonces se podría concluir que no sabemos cuál es la voluntad del elector que escribió en la papeleta para la alcaldía, en la columna de nominación directa, un nombre que razonablemente identifica a determinada persona, sólo porque no puso una marca en el espacio provisto al lado de ese nombre?

En fin, en los casos ante nuestra consideración surge claramente de la papeleta que el elector quiso votar por nominación directa. De ninguna manera, puede decirse que sustituimos el criterio del elector, cuando lo que hacemos

es adjudicar el voto a favor de la persona que ese elector escribió en la papeleta.

## IV

Por los fundamentos antes expuestos, se confirman las Sentencias emitidas por el Tribunal de Primera Instancia conforme a lo aquí resuelto.

Se dictará sentencia de conformidad.

Erick V. Kolthoff Caraballo
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Ismael "Titi" Rodríguez Ramos, como Candidato a la Alcaldía de Guánica por el Partido Popular Democrático, Precinto 048 de Guánica<br><br>Peticionario<br><br><br>v.<br><br>Comisión Estatal de Elecciones, a través de su Presidente, Hon. Francisco J. Rosado Colomer; Roberto Iván Aponte Berríos, como Comisionado Electoral del Partido Independentista Puertorriqueño; Héctor J. Sánchez Álvarez, como Comisionado Electoral del Partido Nuevo Progresista; Gerardo A. Cruz Maldonado, como Comisionado Electoral del Partido Popular Democrático; Juan Manuel Frontera Suau, como Comisionado Electoral del Partido Proyecto Dignidad; Olvin Valentín Rivera, como Comisionado Electoral del Partido Movimiento Victoria Ciudadana; María J. Ruiz Ramos candidata a alcaldesa de Guánica por el Partido Independentista Puertorriqueño; Santos "Papichy" Seda Nazario candidato a alcalde de Guánica por el Partido Nuevo Progresista; y Edgardo Cruz, ciudadano que promovió su nombre por nominación directa<br><br>Recurridos | CT-2021-1<br><br>cons. con<br><br>CT-2021-2 | Certificación Intrajurisdiccional |
| Edgardo Cruz Vélez, como candidato a la Alcaldía del Municipio de Guánica bajo la | | |

modalidad de nominación directa

Recurrido

v.

Ismael "Titi" Rodríguez Ramos, Candidato a la Alcaldía de Guánica por el Partido Popular Democrático

Peticionario

Comisión Estatal de Elecciones, representada por su presidente, Francisco Rosado Colomer; Roberto Iván Aponte Berríos, como Comisionado Electoral del Partido Independentista Puertorriqueño; Olvin Valentín, como Comisionado Electoral del Movimiento Victoria Ciudadana; Gerardo A. Cruz Maldonado, como Comisionado Electoral del Partido Popular Democrático; Edwardo García Rexach, como Comisionado Electoral del Proyecto Dignidad; Héctor J. Sánchez Álvarez, Comisionado Electoral del Partido Nuevo Progresista, María J. Ruiz Ramos, candidata a la alcaldía de Guánica por el PIP y Santos Seda Nazario, candidato a alcalde de Guánica por el PNP

Recurridos

SENTENCIA

En San Juan, Puerto Rico, a 12 de enero de 2021.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte de esta Sentencia, se confirman las sentencias del Tribunal de Primera Instancia.

**Notifíquese inmediatamente por teléfono y por correo electrónico.**

Lo acordó el Tribunal y certifica el Secretario del Tribunal Supremo. La Jueza Presidenta Oronoz Rodríguez emitió una opinión de conformidad. El Juez Asociado señor Estrella Martínez emitió una opinión de conformidad a la cual se unió la Jueza Asociada señora Pabón Charneco. El Juez Asociado señor Colón Pérez emitió una opinión concurrente. El Juez Asociado señor Martínez Torres emitió una opinión disidente.

José Ignacio Campos Pérez
Secretario del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Ismael "Titi" Rodríguez Ramos, como Candidato a la Alcaldía de Guánica por el Partido Popular Democrático, Precinto 048 de Guánica<br><br>Peticionario<br><br>v.<br><br>Comisión Estatal de Elecciones, a través de su Presidente, Hon. Francisco J. Rosado Colomer; Roberto Iván Aponte Berríos, como Comisionado Electoral del Partido Independentista Puertorriqueño; Héctor J. Sánchez Álvarez, como Comisionado Electoral del Partido Nuevo Progresista; Gerardo A. Cruz Maldonado, como Comisionado Electoral del Partido Popular Democrático; Juan Manuel Frontera Suau, como Comisionado Electoral del Partido Proyecto Dignidad; Olvin Valentín Rivera, como Comisionado Electoral del Partido Movimiento Victoria Ciudadana; María J. Ruiz Ramos candidata a alcaldesa de Guánica por el Partido Independentista Puertorriqueño; Santos "Papichy" Seda Nazario candidato a alcalde de Guánica por el Partido Nuevo Progresista; y Edgardo Cruz, ciudadano que promovió su nombre por nominación directa<br><br>Recurridos<br>_____<br><br>Edgardo Cruz Vélez, como candidato a la Alcaldía del Municipio de Guánica | CT-2021-01<br>Cons. con<br>CT-2021-02 | *Certificación intrajurisdiccional* |

bajo la modalidad de nominación directa

                    Recurrido

                        v.

Ismael "Titi" Rodríguez Ramos, Candidato a la Alcaldía de Guánica por el Partido Popular Democrático

                    Peticionario

Comisión Estatal de Elecciones, representada por su Presidente, Francisco Rosado Colomer; Roberto Iván Aponte Berríos, como Comisionado Electoral del Partido Independentista Puertorriqueño; Olvin Valentín, como Comisionado Electoral del Movimiento Victoria Ciudadana; Gerardo A. Cruz Maldonado, como Comisionado Electoral del Partido Popular Democrático; Edwardo García Rexach, como Comisionado Electoral del Proyecto Dignidad; Héctor J. Sánchez Álvarez, Comisionado Electoral del Partido Nuevo Progresista, María J. Ruiz Ramos, candidata a la alcaldía de Guánica por el PIP y Santos Seda Nazario, candidato a alcalde de Guánica por el PNP

                    Recurridos

Opinión de conformidad emitida por la Jueza Presidenta ORONOZ RODRÍGUEZ.


En San Juan, Puerto Rico, a 12 de enero de 2021.

Estoy de acuerdo con la determinación de este Tribunal, de confirmar las Sentencias recurridas. Sin embargo, estimo necesario abordar dos (2) aspectos adicionales relacionados a la anulación de votos ("*disenfranchisement*") que aquí se persigue.

En primer lugar, según reconoce el Presidente de la Comisión Estatal de Elecciones (Comisión) en su comparecencia ante nos, durante el presente ciclo electoral y, <u>previo</u> a la celebración de las Elecciones Generales, la Comisión aprobó y revisó -- de manera unánime por todos sus comisionados -- los reglamentos y manuales que regirían los referidos procesos electorales.[37]

En lo aquí pertinente, la Regla 48 del *Reglamento para las Elecciones Generales y Escrutinio 2020* fue enmendada durante el mes de septiembre de 2020 para proveer que "[e]n los casos de nominación directa, se reconocerá como voto aquella nominación directa hecha por el elector que contenga el **nombre** del Candidato"[38], excluyendo la referencia a contener el "nombre **completo**"[39] que hace el Artículo 2.3(55) del Código Electoral, 16 LPRA sec. 4503(55). Asimismo, la sección 5.7.2 de las *Reglas y criterios para la adjudicación manual de papeletas,* aprobadas de manera unánime el 30 de octubre de 2020, establece lo siguiente:

---

[37] Reglamentos y manuales que ningún candidato impugnó previo a las elecciones.
[38] Énfasis suplido.
[39] Énfasis suplido.

> **Todo nombre, aunque esté mal escrito, en la columna de Nominación Directa o "Write-In" se adjudicará a favor de la persona** indicada para el cargo correspondiente del cuadrante donde se escribió. Si dicho cargo impreso fue tachado y sustituido por otro cargo, el voto se adjudicará para la posición expresamente escrita y lo perderá el candidato del partido político bajo el cual votó que corresponda a dicha posición, aun cuando esté escrito fuera de lugar. **Disponiéndose que, para adjudicar el voto al nombre escrito, no será necesario que el elector haga una marca en el rectángulo en blanco al lado del nombre.** (Énfasis suplido).

Aunque ahora se nos plantea que estas reglas no deben seguirse, bajo el argumento de que no resultaban correctas bajo la ley electoral, debe tenerse presente que consideraciones constitucionales limitan la facultad del Estado para cambiar las reglas de juego en una elección ya celebrada. *Véase* Baber v. Dunlap, 349 F. Supp. 3d 68, 76 (D. Me. 2018) ("for this Court to change the rules of the election, after the votes have been cast, could well offend due process.").

Es decir, si el Estado ha aprobado unas reglas para una elección no podría luego pretender anular los votos que se han emitido conforme a estas, promoviendo un cambio *ex post facto* en las reglas de la elección. *Véase* Griffin v. Burns, 570 F.2d 1065, 1070 (1er Circ. 1978); Roe v. State of Ala. By & Through Evans, 43 F.3d 574, 581 (11mo Circ. 1995).

Ello pues, "changing the rules of the game after it has been played and the score is known, violates fundamental rules of fair play. Such action gives the appearance of, as well as is, actual unfairness and consequently violates due

process of law." <u>PNP v. Barreto Pérez</u>, 639 F.2d 825, 827 (1er Circ. 1980) *citando a* <u>PNP v. Barreto Pérez</u>, 507 F. Supp. 1164, 1174 (D.P.R. 1980).

En segundo lugar, considero que una construcción estatutaria de la ley electoral nos llevaría al mismo resultado, confirmatorio de las Sentencias recurridas. Adviértase que la definición de "Voto por Nominación Directa" provista por el Artículo 2.3(112) del Código Electoral, 16 LPRA sec. 4503(112), no requiere que el elector escriba el nombre completo. Asimismo, el Art. 5.1 del Código Electoral, 16 LPRA sec. 4561, provee para que el voto "se cuente y se adjudique conforme a la intención del Elector al emitirlo", lo cual impediría anular los votos en cuestión.

En vista de lo anterior, expuestos estos fundamentos adicionales, estoy conforme con la determinación de confirmar las Sentencias recurridas.

Maite D. Oronoz Rodríguez
Jueza Presidenta

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

|  |  |  |
|---|---|---|
| Ismael "Titi" Rodríguez Ramos, como Candidato a la Alcaldía de Guánica por el Partido Popular Democrático, Precinto 048 de Guánica<br><br>Peticionario<br><br>v.<br><br>Comisión Estatal de Elecciones, a través de su Presidente, Hon. Francisco J. Rosado Colomer; Roberto Iván Aponte Berríos, como Comisionado Electoral del Partido Independentista Puertorriqueño; Héctor J. Sánchez Álvarez, como Comisionado Electoral del Partido Nuevo Progresista; Gerardo A. Cruz Maldonado, como Comisionado Electoral del Partido Popular Democrático; Juan Manuel Frontera Suau, como Comisionado Electoral del Partido Proyecto Dignidad; Olvin Valentín Rivera, como Comisionado Electoral del Partido Movimiento Victoria Ciudadana; María J. Ruiz Ramos candidata a alcaldesa de Guánica por el Partido Independentista Puertorriqueño; Santos "Papichy" Seda Nazario candidato a alcalde de Guánica por el Partido Nuevo Progresista; y Edgardo Cruz, ciudadano que promovió su nombre por nominación directa<br><br>Recurridos | CT-2021-1<br>Cons.<br>CT-2021-2 | Certificación intrajurisdiccional |

Edgardo Cruz Vélez, como candidato a la Alcaldía del Municipio de Guánica bajo la modalidad de nominación directa

Recurrido

v.

Ismael "Titi" Rodríguez Ramos, Candidato a la Alcaldía de Guánica por el Partido Popular Democrático

Peticionario

Comisión Estatal de Elecciones, representada por su Presidente, Francisco Rosado Colomer; Roberto Iván Aponte Berríos, como Comisionado Electoral del Partido Independentista Puertorriqueño; Olvin Valentín, como Comisionado Electoral del Movimiento Victoria Ciudadana; Gerardo A. Cruz Maldonado, como Comisionado Electoral del Partido Popular Democrático; Edwardo García Rexach, como Comisionado Electoral del Proyecto Dignidad; Héctor J. Sánchez Álvarez, Comisionado Electoral del Partido Nuevo Progresista, María J. Ruiz Ramos, candidata a la alcaldía de Guánica por el PIP y Santos Seda Nazario, candidato a alcalde de Guánica por el PNP

Recurridos

Opinión de conformidad emitida por el Juez Asociado señor ESTRELLA MARTÍNEZ a la cual se une la Jueza Asociada señora PABÓN CHARNECO.

San Juan, Puerto Rico, a 12 de enero de 2021.

Nuevamente esta institución ejerce su responsabilidad de hacer valer la voluntad del Pueblo por encima de consideraciones e intereses particulares de algunos componentes del sistema electoral. La interpretación que hace hoy este Tribunal reconoce la preeminencia de las garantías constitucionales del derecho al sufragio, a la vez que armoniza diversas disposiciones estatutarias y reglamentarias para evitar llegar a un resultado autómata y absurdo que tenga como consecuencia entorpecer la voluntad del electorado del pueblo de Guánica, sin justificación alguna. En ese sentido, la controversia ante nuestra consideración requiere, en primer lugar, que descartemos la pretensión propuesta que eliminaría automáticamente los votos por nominación directa a favor del Sr. Edgardo Cruz Vélez (señor Cruz Vélez) en aquellos casos en que el elector o la electora cometió errores ortográficos al identificar al candidato de su preferencia. En segundo lugar, requiere que rechacemos la conclusión que invalidaría el voto realizado por el electorado que tuvo interacción con la máquina de escrutinio electrónico y votó por nominación directa por el señor Cruz Vélez, pero no realizó una marca en el rectángulo en blanco al lado de su nombre. En reconocimiento de que la interacción entre el ordenamiento constitucional y estatutario en materia electoral requiere que

se le brinde primacía a la intención del electorado ante cualquier limitación irrazonable que obstaculice tal intención, máxime cuando nos encontramos ante el escenario particular de votos por nominación directa, estoy conforme con la Opinión mayoritaria que hoy emite este Tribunal. Veamos el derecho aplicable a la controversia ante nuestra consideración.

**I**
**A.**

De entrada, muestro mi conformidad ante la facultad ejercida por este Tribunal al consolidar y certificar intrajurisdiccionalmente la controversia aquí planteada. Ley de la Judicatura, Ley Núm. 201-2003, 24 LPRA sec. 24s (f); Código Electoral de Puerto Rico de 2020, infra. Véase además, Regla 52.2(d) de Procedimiento Civil, 32 LPRA Ap. V. A la luz de este marco estatutario, consecuentemente he favorecido la expedición de recursos de certificación con el propósito de atender eficaz y oportunamente controversias electorales de alto interés público. Véase, Gautier Vega v. Comisión Estatal de Elecciones, 2020 TSPR 131 (Estrella Martínez, J., Opinión de conformidad); Pierluisi-Urrutia v. Comisión Estatal de Elecciones, 2020 TSPR 82 (Estrella Martínez, J., Opinión de conformidad); Com. PNP v. CEE, 196 DPR 651, 657-658 (2016) (Estrella Martínez, J., Voto particular de conformidad).

Asimismo, hemos reiterado la idoneidad de la utilización del mecanismo de certificación en controversias electorales en las cuales se cuestiona la legitimidad de los procesos

democráticos y nuestras instituciones. (Citas omitidas). <u>Pierluisi-Urrutia v. Comisión Estatal de Elecciones</u>, supra, págs. 4-5. Ciertamente, nos encontramos ante una controversia de alto interés público. La consolidación y certificación aquí realizadas, proveen un remedio adecuado, completo y oportuno que brindará certeza a la elección del nuevo alcalde del pueblo de Guánica.

Una actuación contraria, conllevaría cerrar las puertas de los tribunales y avalar que la Comisión Estatal de Elecciones tenga carta blanca para emitir resoluciones y determinaciones sin posibilidad de que las partes afectadas puedan revisarlas judicialmente hasta que se emitan certificaciones finales de elección. Ello es sencillamente contrario a las normas jurisdiccionales que provee nuestro Derecho Electoral. Como agravante, implicaría también ignorar que uno de los candidatos ha juramentado en propiedad como Alcalde, **a pesar de que no ha finalizado el recuento de <u>todos los votos</u>** y de que no hay un dictamen final en torno a esta controversia. Por tanto, pretender que el trámite judicial prosiga un curso ordinario, sería impermisible y algo nunca antes visto en Puerto Rico.

**B.**

Como es conocido, tanto la Constitución de Estados Unidos como la Constitución de Puerto Rico consagran como una garantía fundamental el derecho al voto. Como muestra del arraigo de estos preceptos, nuestra Constitución impuso una

restricción a la intervención de este derecho al establecer expresamente que las leyes aprobadas por la Asamblea Legislativa siempre "**garantizarán la expresión de la voluntad del [P]ueblo** mediante el sufragio universal, igual, directo y secreto, y protegerán al ciudadano contra toda coacción en el ejercicio de la prerrogativa electoral". (Énfasis suplido). Art. II, Sec. 2, Const. PR, LPRA, Tomo 1. En ese sentido, la Constitución facultó a la Asamblea Legislativa a regular todo lo concerniente a nuestro ordenamiento electoral, teniendo en cuenta la insoslayable dimensión constitucional que goza el derecho al voto. Const. PR, supra, Art. VI, Sec. 4; Pierluisi-Urrutia v. Comisión Estatal de Elecciones, supra, pág. 5 (citando a McClintock v. Rivera Schatz, 171 DPR 584, 597 (2007)).

No obstante, hemos reconocido que "[l]a cláusula constitucional expresamente dirigida a garantizar [el derecho al voto] no puede quedar sin contenido, como ciertamente quedaría si el margen de autoridad de la Asamblea Legislativa, para ordenar y regular el ejercicio de la franquicia electoral fuese absoluto". Gautier Vega v. Comisión Estatal de Elecciones, supra, pág. 8 (citando a PSP, PPD, PIP v. Romero Barceló, 110 DPR 248, 257 (1980)). Por tanto, es a causa de esta incuestionable interacción que este Tribunal ha resuelto que las controversias electorales deben evaluarse bajo el crisol de postulados tanto constitucionales como estatutarios.

(Citas omitidas). Pierluisi-Urrutia v. Comisión Estatal de Elecciones, supra, pág. 5.

Ahora bien, en atención a ese mandato constitucional, la Asamblea Legislativa aprobó el Código Electoral de Puerto Rico de 2020, Ley Núm. 58-2020, 16 LPRA sec. 4501, et seq. (Código Electoral). La Exposición de Motivos del Código Electoral consignó como uno de sus propósitos fundamentales el "**[e]mpoderar a los electores [y a las electoras] facilitando su acceso a los procesos relacionados con el ejercicio de su derecho al voto**". (Énfasis suplido). Cónsono con ello, reafirmó el derecho fundamental al voto como "la más clara expresión e intención de la voluntad democrática del pueblo…". Art. 5.1 del Código Electoral, supra.

Asimismo, el Código Electoral reconoce como derechos y prerrogativas individuales del electorado, entre otros, la "libre emisión del voto y **a que se cuente y adjudique conforme a la intención del Elector [o de la Electora] al emitirlo**"; a que converja "[l]a más **amplia accesibilidad del Elector [o de la Electora], sin barreras y sin condiciones procesales onerosas**, a toda transacción y servicio electoral, **incluyendo el ejercicio de su derecho al voto**"; a que "**el sistema y los procedimientos electorales estén fundamentados en su más amplia participación y accesibilidad**", así como el derecho del electorado "al voto íntegro, al voto mixto, al voto por candidatura y **a la nominación directa de personas a cargos públicos electivos bajo condiciones de igualdad en cada**

**caso**…". (Énfasis suplido). Art. 5.1(1),(4), (5) y (8) del Código Electoral, supra. Estos derechos y prerrogativas individuales gozan de tal envergadura que el propio Código Electoral establece la supremacía de éstos ante los derechos y prerrogativas de los partidos, candidatos independientes y agrupaciones políticas. Art. 5.1 (2) del Código Electoral, supra.

En más de una ocasión, el Código Electoral reconoce la importancia de la intención del elector o de la electora en nuestro andamiaje electoral. Para materializar tal intención, el Artículo 10.10 del Código Electoral específicamente detalla que:

> En la adjudicación de una papeleta, el **criterio rector que debe prevalecer es respetar la intención del elector [o de la electora] al emitir su voto** con marcas válidas **que se evaluarán conforme a reglas de adjudicación objetivas y uniformes utilizadas** por los sistemas electrónicos de votación o **escrutinio utilizados por la Comisión.**

> Esta intención es directamente manifestada por el elector [o la electora] cuando el sistema electrónico evalúa la papeleta marcada en la pantalla de un dispositivo o introducida en el OpScan y avisa al elector [o a la electora] de cualquier condición de papeleta mal votada, papeleta con cargos mal votados, cargos votados de menos o papeleta en blanco y el propio elector [o la propia electora] confirma su intención de que la papeleta sea contabilizada tal y como está o, si por el contrario, desea volver a marcar la papeleta para hacer las correcciones que considere necesarias a su única discreción. Esta intención manifestada por el elector [o la electora], al momento de transmitir o procesar su papeleta, regirá cualquier determinación sobre la interpretación de su intención al emitir su voto.

> No será adjudicada ninguna marca hecha por un elector [o una electora] a favor de partido político, candidato o nominado, si la misma fue hecha al dorso de la papeleta o fuera del área de reconocimiento de marca por lo que esta se considerará inconsecuente. (Énfasis suplido). Íd.

Como puede apreciarse, el Código Electoral supedita la intención del electorado a que haya realizado una marca válida y, particularmente, a su proceder luego de que la máquina de escrutinio electrónico, presuntamente, le advirtiera de la validez o no de la papeleta al ser procesada. La imposición de estos criterios absolutos, particularmente ante un escenario como el de autos en el cual la intención del electorado puede ser válida y razonablemente inferida con una lectura del nombre que el elector o la electora escribió en la columna de nominación directa, requiere que precisemos la interacción entre los postulados constitucionales y estatutarios que regulan el derecho al voto. Lo anterior, teniendo en mente que el derecho al sufragio es uno de los derechos fundamentales del Pueblo y, como tal, este Tribunal tiene la "obligación de hacerlo observar y respetar". PPD v. Admor. Gen. de Elecciones, 111 DPR 199, 221 (1981).

A la luz de nuestro deber de observar y respetar el voto del electorado, consistentemente hemos reconocido que, antes de invalidar un voto, debemos auscultar la intención del elector o de la electora. Ante el privilegio que goza el derecho al sufragio, en PSP v. Comisión Estatal de Elecciones

instruimos a aquellos funcionarios y organismos llamados a adjudicar un voto a que:

> **[D]ebe ser norma irreducible la de evaluarlo con el mayor respeto a la voluntad del elector [o de la electora] y con el óptimo esfuerzo por salvar su intención si ésta encuentra apoyo en la inteligencia aplicada al examen de la papeleta, obviando inobservancias de índole formal que en ejercicio de entendimiento razonable no ocultan ni enredan en confusión la verdadera intención del [o de la] votante.**(Énfasis suplido). Íd., pág. 460.

Más adelante, en Santos v. Comisión Estatal de Elecciones, 111 DPR 351 (1981), al atender una controversia similar a la de autos en la cual existía divergencia en cuanto a la validez de determinadas papeletas que contenían variaciones del nombre de un candidato por nominación directa, expresamos lo siguiente:

> El evento comicial envuelve a una población que excede el millón y medio de **todo tipo de personas, de las más diversas posiciones sociales y condiciones intelectuales y académicas.** Bajo esa óptica, hemos de recordar la admonición constitucional de que '[n]adie será privado del derecho al voto por no saber leer o escribir...', Art. VI, Sec. 4. **En su correcta dimensión este postulado puede conllevar, en sus variadas manifestaciones, una prohibición a que se anule el voto por que el elector no siga instrucciones que sólo afectan de manera mínima el interés legislativo que persigue reconocer la verdadera voluntad del elector [o de la electora].** (Énfasis suplido). Íd., pág. 357.

Particularmente, en Santos v. Comisión Estatal de Elecciones, supra, sostuvimos tales variaciones en el nombre del candidato y, con ello, implícitamente validamos la contención del organismo administrativo electoral quien arguyó que los referidos votos debían ser válidamente adjudicados,

pues "**[e]s más clara la intención del elector al escribir un nombre que al hacer una cruz**". (Énfasis suplido). Íd., pág. 354.

Consecuentemente, hemos ratificado el privilegio que goza la intención del electorado, incluso en controversias relacionadas a votaciones por nominación directa. Esto, pues es nuestro deber apartarnos de una interpretación literal y rigurosa que plantee inevitablemente la anulación de ciertos votos por el incumplimiento de requisitos de forma irrazonables.

De este modo, este Tribunal ha protegido el derecho al sufragio y ha impedido que un voto sea anulado o pueda "menguarse su validez, **por fallas de las que no puede responsabilizarse al elector [o a la electora]**". PPD v. Admor. Gen. de Elecciones, 111 DPR 199, 208 (1981).

**C.**

Por su parte, el Artículo 9.27(1) del Código Electoral, supra, establece que la Comisión Estatal de Elecciones (CEE) reglamentará las maneras en las que el electorado marcará sus papeletas de votación y, en lo pertinente, establece que "**la manera para marcar la papeleta que se reglamentará será la más sencilla posible** y permitirá que se pueda emitir el voto íntegro, mixto, por candidatura o **nominación directa**". (Énfasis suplido). Íd.

Así las cosas, el Código Electoral precisa cómo debe ser emitido un voto por nominación directa. A esos fines, el

Artículo 9.10(3) del Código Electoral, <u>supra</u>, contiene unas instrucciones dirigidas al electorado que emitirá su voto por nominación directa en una Papeleta Municipal, las cuales disponen lo siguiente:

> CÓMO VOTAR POR NOMINACIÓN DIRECTA
> En esta columna puede votar por otra(s) persona(s) distinta(s) a las que aparecen como candidatos(as) en las columnas anteriores de esta papeleta. Para votar por la(s) persona(s) de su preferencia, escriba su **nombre completo** en el encasillado de la columna de nominación directa que corresponda a la candidatura y también debe **hacer una Marca Válida** dentro del rectángulo en blanco al lado de cada nombre escrito…. (Énfasis suplido). Íd.

Cabe resaltar que el precepto antes citado no es el único que establece la exigencia de que se escriba el nombre completo de la persona que el electorado escoja votar por nominación directa, sino que el Artículo 2.3 (55) del Código Electoral, <u>supra</u>, al definir el término "Marca Válida en la Papeleta", en cambio, contempla expresamente dos (2) alternativas válidas en los casos de nominación directa, a saber: (1) el nombre completo o (2) la alternativa.[40]

---

[40]El texto íntegro de la definición de "Marca Válida en la Papeleta" lee como sigue:

Trazo hecho por el Elector sobre la Papeleta en papel y dentro del área de reconocimiento de Marca que no sea menor de cuatro (4) milímetros cuadrados. Toda Marca hecha fuera del área de reconocimiento de Marca, será inválida y se tendrá como no puesta y, por ende, inconsecuente. Para que un voto sea reconocido tendrá que cumplir con los requisitos y las especificaciones de marca válida. **En los casos de nominación directa,** se reconocerá como voto aquella nominación directa hecha por el Elector que contenga el **nombre completo** del Candidato **o alternativa, según corresponda al tipo de Votación,** y una marca válida en el área de reconocimiento de marca dentro de la columna de nominación directa en la Papeleta. (Énfasis suplido). Íd.

Como muestra de la falta de uniformidad existente, el Artículo 2.3(112) del Código Electoral, _supra_, al definir "Voto por Nominación Directa" dispone que:

> [S]u validez consistirá en que el Elector [o la Electora] escriba el **nombre de la persona** de su preferencia dentro del encasillado impreso en la Papeleta que corresponda al cargo electivo de su interés en la columna de nominación directa **y haga una marca válida** dentro del cuadrante correspondiente a ese encasillado…. (Énfasis suplido). Íd.

Una lectura de estas disposiciones, más allá de brindar certeza, resulta en una diversidad de interpretaciones contradictorias entre sí. Lo anterior, debido a que el Código Electoral carece de uniformidad en cuanto al requerimiento del nombre completo o simplemente el nombre de la persona por la cual el elector o la electora ejercerá su derecho al voto por nominación directa.

En atención a ello, consideramos apropiado recurrir a las Reglas y criterios de adjudicación manual,[41] y al Manual de procedimientos para el escrutinio general y recuento 2020,[42] _supra_, específicamente en las Secciones 5.7.2 y 18.6(b),

---

[41]Comisión Estatal de Elecciones, Reglas y criterios para la adjudicación manual de papeletas, pág. 4. (https://ceepur.org/Elecciones/docs/Reglas%20y%20criterios%20para%20la%20adjudicacion%20manual%20de%20papeletas.pdf) (última visita 10 de enero de 2021).

[42]Comisión Estatal de Elecciones, Manual de procedimientos para el escrutinio general y recuento 2020, pág. 4 (https://ww2.ceepur.org/sites/ComisionEE/es-pr/Secretaria/Manuales/Manual%20de%20procedimientos%20para%20el%20Escrutinio%20General%20y%20Recuento%202020.pdf)(última visita 10 de enero de 2021).

respectivamente, para auscultar cómo debe adjudicarse el voto por nominación directa en una papeleta, ya sea en el proceso de conteo manual o recuento. Como parte de tal proceso, ambos cuerpos normativos contienen exactamente el mismo lenguaje, al especificar que:

> **Todo nombre, aunque esté mal escrito**, en la columna de Nominación Directa o "Write-In" **se adjudicará a favor de la persona indicada para el cargo correspondiente del cuadrante donde se escribió.** Si dicho cargo impreso fue tachado y sustituido por otro cargo, el voto se adjudicará para la posición expresamente escrita y lo perderá el candidato del partido político bajo el cual votó que corresponda a dicha posición, aún cuando esté escrito fuera de lugar. **Disponiéndose que, para adjudicar el voto al nombre escrito, no será necesario que el elector haga una marca en el rectángulo en blanco al lado del nombre.** (Énfasis suplido). Íd.

Nótese que, distinto a las diversas disposiciones del Código Electoral, tanto las reglas como el manual antes citado hacen referencia a todo nombre, sin importar que esté bien o mal escrito. Más importante aún, señalan que, al adjudicar el voto al nombre escrito en la columna de voto por nominación directa, no será necesario que el elector haga una marca.

Cónsono con lo anterior, las Reglas y criterios de adjudicación manual, supra, y el Manual de procedimientos para el escrutinio general y recuento 2020, supra, específicamente en las Secciones 5.8 y 18.7, respectivamente, establecen que **"[o]tras marcas bajo la columna de Nominación Directa o 'Write-In', que no sean nombres, se tendrán por no puestas"**. (Énfasis suplido). Íd.

De este modo, la CEE realizó un balance adecuado entre las particularidades que emanan del derecho al voto por nominación directa y los requisitos de forma estatutarios que obstaculizaban la intención del elector o de la electora y, en consecuencia, se encontraban reñidas con las garantías constitucionales que cobijan el derecho al sufragio.

**II**

Tenemos ante nuestra consideración la consolidación de dos (2) peticiones de certificación intrajurisdiccional en las cuales se cuestionó ante el Tribunal de Primera Instancia las determinaciones del Presidente de la CEE ante dos (2) controversias electorales distintas, pero estrechamente relacionadas entre sí.

En apretada síntesis, en el recurso CT-2020-01, el Presidente de la CEE, mediante la <u>Certificación de Desacuerdo-Resolución</u>, CEE-AC-2020-546, determinó que de acuerdo con los pronunciamientos de este Tribunal en cuanto a la preeminencia de la intención del elector o de la electora y conforme con las <u>Reglas y criterios de adjudicación manual</u>, <u>supra</u>, una serie de votos por nominación directa que contenían el nombre del señor Cruz Vélez, a pesar de contener errores ortográficos, serían adjudicados a éste debido a que representaban claramente la voluntad del electorado en votar por "Edgardo Cruz Vélez".

Específicamente, el Presidente identificó y aceptó sesenta y cuatro (64) nombres entre los cuales, por lo escrito

con su puño y letra por cada elector o electora, se podía inferir razonablemente la intención de que su voto fuese adjudicado a favor del señor Cruz Vélez. Trabada la controversia, el Sr. Ismael "Titi" Rodríguez Ramos (señor Rodríguez Ramos), candidato a la alcaldía de Guánica por el Partido Popular Democrático, acudió con un recurso de revisión judicial al Tribunal de Primera Instancia. Luego de una serie de trámites procesales, el foro de instancia desestimó el recurso y concluyó correctamente que el Presidente de la CEE actuó conforme a las facultades delegadas por ley y armonizó las disposiciones del ordenamiento electoral a la luz de nuestra jurisprudencia interpretativa relacionada a la intención del elector o de la electora al momento de adjudicar un voto.

Por otro lado, y en cuanto a lo que el recurso CT-2020-02 respecta, el Presidente de la CEE, mediante la Certificación de Desacuerdo-Resolución, CEE-AC-20-547, concluyó que los votos por nominación directa que no contenían una marca en el rectángulo en blanco al lado del nombre del señor Cruz Vélez tendrían dos (2) tratamientos distintos, lo cual dependería de si el elector o la electora tuvo interacción o no con la máquina de escrutinio electrónico. Particularmente, el Presidente sostuvo escuetamente que en aquellos casos en que sí hubo interacción con la máquina, los votos sin marca no se adjudicarían; mientras que, por otro lado, afirmó que en aquellos casos en los que no hubo interacción con la máquina

por ser votos pertenecientes a la Unidad 77 de JAVAA, debido a la ausencia de interacción con la máquina, los votos de nominación directa sin una marca sí serían adjudicados a favor del señor Cruz Vélez.

Oportunamente, el señor Cruz Vélez presentó un recurso de revisión judicial en el Tribunal de Primera Instancia. Luego de varias incidencias que resultan innecesarias pormenorizar, el foro de instancia revocó en parte la referida resolución y, justamente, ordenó contar todos los votos por nominación directa que no tuvieran la marca en el rectángulo en blanco al lado del nombre del señor Cruz Vélez, independientemente de si el elector o la electora tuvo interacción con la máquina de escrutinio electrónico. Inconforme con ambas determinaciones del Tribunal de Primera Instancia, el señor Rodríguez Ramos acudió ante nos y, luego de consolidar ambos recursos, expedimos la certificación intrajurisdiccional que hoy nos ocupa.

Según reseñamos, esta controversia requiere que armonicemos los preceptos estatutarios que establecen de forma absoluta unos requisitos de forma que resultan en un obstáculo en la consecución de las garantías fundamentales al derecho al voto dispuestas en la Constitución. Como hemos establecido anteriormente, el derecho al voto es una de las garantías fundamentales de nuestro sistema democrático de gobierno, pues es mediante el sufragio que el Pueblo tiene la oportunidad de ejercer su poder soberano y expresar su voluntad. (Citas

omitidas). Pierluisi-Urrutia v. Comisión Estatal de Elecciones, supra, pág. 5 Tan es así, que la Constitución no sólo garantiza esta expresión de voluntad mediante el sufragio universal, igual, directo y secreto, sino que, además, protege a la ciudadanía contra toda coacción que atente contra el ejercicio de la prerrogativa electoral de nuestro electorado. Íd., pág. 5. **En esa dirección, ni siquiera puede menguarse la voluntad del Pueblo ejercida mediante el voto por razones tales como la posición social o condiciones intelectuales y académicas del electorado, pues nuestra Constitución establece expresamente que "[n]adie será privado del derecho al voto por no saber leer o escribir".** (Énfasis suplido). Art. VI, Sec. 4, Const. PR., supra.

Bajo esa óptica, los requisitos impuestos por el Código Electoral deben interpretarse de tal forma que no impongan al elector o a la electora condiciones de difícil cumplimiento o exigencias que resulten en obstáculos que menoscaben su derecho. Dicho de otro modo, los postulados constitucionales proscriben la anulación de un voto cuando las normas procesales promulgadas por la partidocracia constituyen obstáculos irrazonables y, en consecuencia, provocan un balance lesivo a la democracia que, más allá de ocasionar tal menoscabo, desalientan el ejercicio del derecho al voto.

En ese sentido, no podemos avalar la contención del señor Rodríguez Ramos que busca que invalidemos determinados votos por nominación directa a favor del señor Cruz Vélez por no

cumplir con el requisito estatuido en el Artículo 9.10(3) del Código Electoral, supra. Adviértase que, en armonía con estos principios y teniendo en consideración cuán fundamental es el derecho al voto en nuestro ordenamiento jurídico, **consideramos impermisible que favorezcamos la anulación o invalidez de un voto por nominación directa a causa de razones de las que no puede responsabilizarse al elector**. Esto, pues a fin de cuenta las limitaciones o dificultades que experimentó un elector o una electora al momento de emitir su voto por nominación directa a favor del señor Cruz Vélez, no deben ser rechazadas livianamente por el simple hecho de los errores ortográficos cometidos, tal y como si fuere su culpa la falta de acceso a una educación plena.

En cambio, le corresponde a este Tribunal atemperar los requisitos del Código Electoral, en conjunto con las Reglas y criterios de adjudicación manual, supra, y nuestra jurisprudencia interpretativa relacionada a la intención del elector o de la electora, para así evitar fricciones constitucionales con el derecho fundamental al voto. Como acertadamente expone la Opinión de este Tribunal, se ha aplicado de manera consistente la interpretación de los estatutos electorales con el fin de hacer valer la intención del o de la votante, por lo que concluimos que la actuación del Presidente, en cuanto validó mediante la Certificación CEE-AC-20-546 una variedad de nombres que claramente muestran la intención de votar por el señor Cruz Vélez, fue correcta.

Las abreviaturas, errores ortográficos u otras variaciones menores en la forma que fue escrito el nombre del señor Cruz Vélez no pueden tomarse en cuenta al determinar la validez del voto emitido, pues aunque no necesariamente se haya escrito el nombre completo del nominado, sí se expresó una identidad alterna que evidencia la intención indiscutible de votar por él.

Aclarado ese extremo, pasemos a discutir la validez del planteamiento del señor Rodríguez Ramos en cuanto a su solicitud de que aquellos votos por nominación directa en los cuales el elector tuvo interacción con la máquina de escrutinio electrónico y no realizó una marca válida al lado del nombre del señor Cruz Vélez, no se le deben adjudicar a este último. Como señalamos anteriormente, no podemos avalar el trato dispar que recibirían dos (2) votos por nominación directa idénticos y cuyo único criterio para determinar la invalidez de uno de ellos redunda arbitrariamente en la intervención de una máquina de escrutinio. Al así hacerlo, el Presidente de la CEE, incorrectamente, brindó primacía a la tecnología por sobre la intención clara del elector.

Reconocemos la idoneidad de que el voto por nominación contenga una marca válida para fines de que la máquina pueda leer ese voto. Sin esa marca, ciertamente, en situaciones en que no hubiese un margen que requiriese ir a un recuento y en caso de que las actas cuadraran en el escrutinio, no se podría saber la existencia de esos votos. Pero la situación en la

controversia ante nos es una muy particular, en la que independientemente de la emisión de los votos de nominación directa, las máquinas de escrutinio y el eventual cotejo del material electoral reveló la necesidad de ir a un recuento por la Alcaldía de Guánica. En ese sentido, resultaba obligatorio examinar todas las papeletas municipales por lo que resulta totalmente incompatible con los principios electorales protegidos por la Constitución y el Código Electoral, ignorar la existencia de miles de votos por nominación directa.

A la luz de una interpretación integral del ordenamiento electoral, el requisito de marca al lado del nombre de una nominación directa, no puede equivaler a un poder de veto de la voluntad de un Pueblo. En todo caso, el propósito de la tecnología debe ser facilitar el proceso electoral y no uno que limite derechos a determinados sectores de la sociedad. **En palabras simples, las máquinas no pueden mandar más que el Pueblo.** Precisamos que es el electorado quien, con su ejercicio al derecho al voto, le confiere legitimidad a la democracia puertorriqueña. Es por ello que opino que los votos por nominación directa que no hayan sido acompañados de una marca en el encasillado, no pueden ser ignorados so pretexto de intervención tecnológica.

Máxime cuando en el caso de un voto emitido por nominación directa, el doble requisito de escribir el nombre de un candidato y, a su vez, realizar una marca al lado de su nombre, no constituye la manera más sencilla posible de marcar

una papeleta, según exigido por el Art. 9.27(1) del Código Electoral, _supra_. En ese caso, requerir una marca y, además, exigir que el electorado escriba el nombre completo de su candidato es un ejercicio redundante que pretende limitar irrazonablemente la prerrogativa del Pueblo. Este tecnicismo contenido en el Código Electoral no propende a garantizar la expresión de la voluntad del Pueblo mediante el ejercicio del derecho al voto. Las garantías constitucionales exigen que protejamos el respeto que goza el derecho al voto en Puerto Rico, lo cual sólo podemos realizar evitando que obstáculos procesales estatutarios prevalezcan sobre la clara intención del elector.

Así, de conformidad con la clara intención del elector y en conjunto con las Reglas y criterios de adjudicación manual, destacamos que, en todos los casos donde un elector o una electora votó por nominación directa, se deberá adjudicar dicho voto a favor del señor Cruz Vélez, sin que sea necesario que se haya hecho una marca en el rectángulo en blanco al lado del nombre. Sin duda alguna, la intención del elector o de la electora se puede inferir claramente tan solo con el acto de escribir en la papeleta, bajo la columna de voto por nominación directa el nombre del señor Cruz Vélez. Como mencionamos, las Reglas y criterios de adjudicación manual, _supra_, y el Manual de procedimienio para el escrutinio general y recuento 2020, _supra_, en sus Secciones 5.8 y 18.7, respectivamente, apoyan esta conclusión al establecer que

"**[o]tras marcas bajo la columna de Nominación Directa o 'Write-In', que no sean nombres, se tendrán por no puestas**".(Énfasis suplido). Íd.

Como puede apreciarse, acoger los planteamientos del señor Rodríguez Ramos conllevaría descartar cientos o hasta miles de votos automáticamente, sin más, al aplicar injustificadamente los escollos levantados por algunos componentes del sistema electoral durante el proceso de recuento de la Alcaldía de Guánica. Claramente, esto representaría una alternativa antidemocrática que no se ajusta a nuestros pronunciamientos jurisprudenciales en torno a nuestro deber de salvaguardar la intención del elector o de la electora.

Tal y como reconoce el Código Electoral, uno de sus principales propósitos es **empoderar a los electores y a las electoras y facilitar su acceso a los procesos relacionados con el ejercicio de su derecho al voto.** Esto, pues el "**elector es el eje y protagonista del sistema electoral y debe serlo sin limitaciones ni condiciones procesales que, irrazonablemente menoscaben, limiten o compliquen el ejercicio del voto**…". Exposición de Motivos del Código Electoral, supra.

Las controversias ante nos requerían de un balance armonioso, tal y como realizó el Tribunal de Primera Instancia, que tuviera como norte garantizar que prevaleciera la intención del elector o de la electora, de modo que se enriqueciera el derecho fundamental al sufragio característico

de nuestra sociedad democrática. Principalmente porque la democracia no se reduce a una visita cada cuatro (4) años a las urnas electorales, sino que, el derecho a seleccionar a un candidato por nominación directa garantiza, además, el derecho del electorado de ejercer su prerrogativa constitucional **<u>sin el filtro de los partidos políticos</u>** y promover la participación ciudadana. **Hoy, este Tribunal protege el derecho constitucional de nuestro electorado a ejercer sus prerrogativas constitucionales sin miedo a que se invalide su intención por no seguir instrucciones que sólo afectan de manera mínima el interés legislativo que persigue reconocer la voluntad electoral.** Un reconocimiento contrario, promovería que, en el mañana, la ciudadanía fuese privada livianamente del acceso a determinados derechos o servicios, basado solamente en la falta de alfabetización, el rezago en las condiciones académicas del individuo o simplemente por la forma y manera en que conocen a su candidato nominado. Sin duda alguna, ello resultaría en una grave injusticia.

En fin, la controversia aquí reseñada no se circunscribe meramente a confirmar la intención del elector o de la electora, lo cual de por sí es determinante, sino más bien a validar la expresión, intención y mandato de un Pueblo de ejercer su derecho al voto por nominación directa a favor del señor Cruz Vélez.

### III

En consecuencia, a la luz de los fundamentos expuestos, estoy conforme con la Opinión mayoritaria.

Luis F. Estrella Martínez
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Ismael "Titi" Rodríguez Ramos, como candidato a la Alcaldía de Guánica por el Partido Popular Democrático, Precinto 048 de Guánica<br><br>Peticionario<br><br>v.<br><br>Comisión Estatal de Elecciones, a través de su Presidente, Hon. Francisco J. Rosado Colomer y otros<br><br>Recurridos<br><br>_____<br>___<br>Edgardo Cruz Vélez, como candidato a la Alcaldía del Municipio de Guánica bajo la modalidad de nominación directa<br><br>Recurrido<br>v.<br>Ismael "Titi" Rodríguez Ramos, candidato a la Alcaldía de Guánica por el Partido Popular Democrático<br><br>Peticionario<br><br>Comisión Estatal de Elecciones, representada por su Presidente, Francisco Rosado Colomer y otros<br><br>Recurridos | CT-2021-1<br>cons. con<br>CT-2021-2 |

Opinión Concurrente emitida por el Juez Asociado señor COLÓN PÉREZ

En San Juan, Puerto Rico a 12 de enero de 2021.

En esta ocasión, le corresponde a este Tribunal determinar si, en el contexto de la contienda electoral por

la Alcaldía del Municipio de Guánica, se deben adjudicar a favor de cierto candidato por nominación directa, -- en específico, al señor Edgardo Cruz Vélez --, aquellas papeletas depositadas en las urnas que contengan dicha modalidad de voto, cuando las mismas enuncien alguna de las (64) variedades de nombres que no sea exactamente "Edgardo Cruz Vélez", aunque sí de alguna forma se relacionan con dicho candidato. Así, también, debemos precisar si procede adjudicar las papeletas con votos por nominación directa, cuando el elector o electora ha interactuado con la máquina de escrutinio, pero no ha hecho una marca en el correspondiente encasillado de nominación directa o *write-in*.

Adelantamos que, tal como correctamente determinó esta Curia en el día de hoy, en ambos escenarios, estos votos deben ser considerados válidos y, por consiguiente, adjudicados. Con ello, se le otorga primacía a la intención de los electores y electoras guaniqueños y guaniqueñas que participaron en el evento electoral celebrado el pasado 3 de noviembre de 2020. No podía ser de otra forma.

**Y es que debe quedar meridianamente claro que, en nuestra jurisdicción, el valor del voto por nominación directa trasciende aquellos escenarios donde las personas que lo emiten, por alguna razón, -- como se alega sucedió en el caso ante nos --, no pueden darle vida con palabras completas, acentos, puntos, comas y/o marcas a su deseo de**

**que determinada persona dirija los destinos de su pueblo; aunque, de un análisis de lo escrito por éstos y éstas, sí se desprenda que los referidos ciudadanos o ciudadanas están muy claros en lo que aspiran. De otorgarle valor a esa máxima, el foro primario se encargó en los dos casos que tuvo ante su consideración y que hoy se consolidan. No vemos razón alguna en derecho para variar dichos dictámenes; mucho menos cuando, -- similar a como ocurrió en el Tribunal de Primera Instancia --, lo que tenemos ante nos como fundamento para la solicitud de anular los votos de determinados puertorriqueños y puertorriqueñas son consideraciones patentemente elitistas e irritantes.[43]**

Veamos.

## I.

Los hechos medulares que dieron margen al presente litigio se resumen con particular precisión en la *Opinión* que hoy emite este Tribunal, razón por la cual hemos decidido adoptarlos por referencia. En esencia, nos corresponde dirimir la validez de la *Resoluciones CEE-AC-20-546* y *CEE-AC-20-547*, ambas emitidas por el Presidente de la Comisión Estatal de Elecciones, Hon. Francisco J. Rosado Colomer (en adelante, "Presidente de la C.E.E.").

En específico, la *Resolución CEE-AC-20-546* versa sobre la adjudicación de determinadas papeletas que contienen

---

[43] En específico, el Tribunal de Primera Instancia atendió este particular en el caso SJ2020CV06817, ahora CT-2021-1. Allí, expresó la importancia de tener en consideración la diversidad de ciudadanos que acuden a ejercer su derecho al voto en Puerto Rico.

votos por nominación directa a favor del señor Edgardo Cruz
Vélez (en adelante, "señor Cruz Vélez"), candidato para la
Alcaldía de Guánica, cuando los mismos no incluyen el nombre
de éste de forma idéntica. Ante dicha controversia, y
habiendo evaluado los argumentos de los distintos
Comisionados Electorales, el Presidente de la C.E.E.
determinó que se entenderían válidos y con la intención de
ser adjudicados al señor Cruz Vélez, sesenta y cuatro (64)
variaciones de nombres.[44] Ello, en aras de proteger la
intención del elector o electora a la hora de emitir su
voto.

Por otro lado, por vía de la *Resolución CEE-AC-20-547*,
se dirimió una controversia sobre la validez de ciertos
votos por nominación directa -- también emitidos en la
contienda electoral por la Alcaldía del Municipio de Guánica
-- que no tuvieran alguna marca en el recuadro
correspondiente, junto al nombre del candidato. Así pues,
tras haber surgido dicho desacuerdo entre los Comisionados
Electorales, el Presidente de la C.E.E. concluyó que en
aquellos casos donde hubo interacción del elector o electora

---

[44] Siendo ello así, se adjudicarían al señor Cruz Vélez los siguientes
votos por nominación directa: E Cruz, E. Cruz, Ecgla Cruz, Eclga Cruz,
Ed. Cruz, Edardo Cruz, Edargo Cruz, Edcerdo Cruz, Edg Cruz, Edgad Cruz,
Edgado Ciuz, Edgado Cruz, Edgaldo, Edgaldo Cruz, Edgando, Edgando Cruz,
Edgar Cruz, Edgard Cruz, Edgarda Cruz, Edgardo, Edgardo C., Edgardo Cos,
Edgardo Cru, Edgardo Cruz, Edgardo Cruz Velez, Edgardo Cuiz, Edgardo
Cur, Edgardo Cuz, Edgardo CZ, Edgardo Guz, Edgarlo Cruz, Edgaro, Edgaro
Cruz, Edgerdo Cruz, Edgordo Cruz, Edgrado Cruz, Edgraydo Cruz, Edgrdo
Cruz, Edguardo Cruz, Edgudo Cruz, Edjardo Cruz, Edjundo Cruz, Eduardo
Cruz, Eduardo Cruz Velez, Edugado, Eg. Cruz, Egad Cruz, Egado Cruz,
Egando Cuz, Egardo Cruz, Egdando Cruz, Eggardo Cruz, Egerdo Cruz, Egurdo
Cruz, Egzido Cruz, Ejgardo Cruz, Elgardo Cruz, Elgnd Cruz, Engodo Cruz,
Esgado Cruz, Esgardo, Esgardo Cruz, Gdgardo Cuiz, Wgardo Cruz. Véase,
Apéndice, CT-2021-1, págs. 5-7.

con la máquina de escrutinio, los votos sin marca no se adjudicarían. Éste fundamentó su conclusión en que el elector o electora, aun cuando la máquina presuntamente les alertó sobre el hecho de que estaba votando en blanco o había mal votado, oprimió el botón de "votar", consintiendo así a que su voto no se adjudicara. Por otro lado, el Presidente de la C.E.E. expresó que los votos por nominación directa de la Unidad 77 de la Junta Administrativa de Voto Ausente y Voto Adelantado (JAVAA) sí podían contabilizarse, ya que no hubo interacción del elector o electora con la máquina de escrutinio.

Ante este escenario, y debido a que ambas *Resoluciones* fueron impugnadas por medio de recursos de revisión ante el Tribunal de Primera Instancia, el foro primario emitió las sentencias que nos ocupan. Dichas *Sentencias* fueron oportunamente notificadas a todas las partes en ambos litigios.

Así las cosas, en lo relacionado a la *Resolución CEE-AC-20-546*, el Tribunal de Primera Instancia avaló la interpretación hecha por el Presidente de la C.E.E., por entender que se estaba salvaguardando la intención del elector y electora al adjudicar a favor del señor Cruz Vélez las papeletas que contuvieran votos de nominación directa con alguna de la multiplicidad de formulaciones de su nombre. Ahora bien, en cuanto a la *Resolución CEE-AC-20-547*, el foro primario determinó que procedía revocar la misma

parcialmente, toda vez que **"[a]l elector escribir el nombre del nominado [,] manifiesta clara e inequívocamente su intención de votar por esa persona, requerirle al elector que suscriba una marca adicional raya en lo absurdo"**. Apéndice, CT-2021-2, pág. 37.

Inconforme con los dictámenes del Tribunal de Primera Instancia, el señor Ismael "Titi" Rodríguez Ramos, candidato a la Alcaldía de Guánica por el Partido Popular Democrático, acudió ante nos mediante los presentes recursos de certificación intrajurisdiccional. En esencia, solicita que esta Curia revoque las determinaciones del foro primario.

Evaluados minuciosa y detenidamente los alegatos de todas las partes con interés en este pleito, este Tribunal ha determinado confirmar las sentencias emitidas por el Tribunal de Primera Instancia. Ello, por entender que se debe aplicar la doctrina de la intención del elector y electora a los casos de votos por nominación directa, como los aquí en controversia. Asimismo, y conforme a lo anterior, se señala que el Presidente de la C.E.E. actuó de acuerdo con sus poderes al interpretar el Código Electoral de 2020, *infra*, y demás textos pertinentes, y permitir la adjudicación de votos que contienen la variedad de formulaciones del nombre del señor Cruz Vélez. Por último, esta Curia determina que -- concorde con la doctrina de la intención del elector y electora -- se actuó correctamente al permitir la adjudicación de los votos donde no se hizo la

marca correspondiente en cierto encasillado de nominación directa, aun cuando el elector o electora haya interactuado con la máquina de escrutinio. Con ese proceder, **concurrimos**. Nos explicamos.

## II.

Como es sabido, el derecho al voto de todo puertorriqueño y puertorriqueña, consagrado en la Constitución del Estado Libre Asociado de Puerto Rico, es la columna vertebral de los principios democráticos que rigen nuestra vida como Pueblo. Art. II, Sec. 2, Const. ELA, LPRA, Tomo 1. En específico, el texto de la precitada cláusula constitucional sostiene que las leyes adoptadas por la Asamblea Legislativa del País "[g]arantizarán la expresión de la voluntad del pueblo mediante el sufragio universal, igual, directo y secreto, y protegerán al ciudadano [o ciudadana] contra toda coacción en el ejercicio de la prerrogativa electoral". *Íd.*

En esa dirección, el Art. VI, Sec. 4, de nuestra Carta Magna, señala que se dispondrá por ley todo lo relativo a los procesos electorales y de inscripción de electores, al igual que lo concerniente a los partidos políticos y las candidaturas. Art. VI, Sec. 4, Const. ELA, LPRA, Tomo 1. Conforme a lo anterior, "la Asamblea Legislativa tiene la facultad y la obligación de aprobar aquella reglamentación que, sin obstaculizar innecesariamente el derecho al voto en todas sus dimensiones, propenda a la realización de un

proceso electoral justo, ordenado, libre de fraude, honesto e íntegro". *P.A.C. v. ELA*, 150 DPR 359, 373 (2000). Véase, también, *P.S.P. v. Com. Estatal de Elecciones*, 110 DPR 400 (1980)*; P.S.P., P.P.D., P.I.P. v. Romero Barceló*, 110 DPR 248 (1980); *P.N.P. v. Tribunal Electoral*, 104 DPR 741 (1976).

A la luz de la facultad que tienen los miembros de la Asamblea Legislativa para regular el proceso electoral en nuestra isla, recientemente se aprobó la Ley Núm. 58-2020, 16 LPRA sec. 4501 *et seq.*, conocida como el Código Electoral de Puerto Rico de 2020 (en adelante, "Código Electoral de 2020"). En su Artículo 5.1 (8), 16 LPRA sec. 4561 (8), el mencionado cuerpo de ley reconoce que los electores y electoras del País podrán ejercer su derecho al voto de distintas maneras, a saber: el voto íntegro, el voto mixto, el voto por candidatura o **el voto por nominación directa de personas a cargos públicos electivos.**

En ese sentido, y en lo pertinente a la controversia que nos ocupa, sobre el voto por nominación directa en la papeleta municipal, el referido Código dispone que se incluirán las siguientes instrucciones para el elector o electora:

> En esta columna puede votar por otra(s) persona(s) distinta(s) a las que aparecen como candidatos(as) en las columnas anteriores de esta papeleta. **Para votar por la(s) persona(s) de su preferencia, escriba su nombre completo en el encasillado de la columna de nominación directa que corresponda a la candidatura y también debe hacer una Marca Válida dentro del rectángulo en blanco al lado de cada**

**nombre escrito**. (Énfasis suplido) Art. 9.10 (3), Código Electoral de 2020, 16 LPRA sec. 4710 (3).

De forma análoga, el Art. 2.3 (55) del Código Electoral de 2020, 16 LPRA sec. 4503(55), hace alusión a que "[e]n los casos de nominación directa, se reconocerá como voto aquella nominación directa hecha por el Elector que contenga el nombre completo del Candidato o alternativa, según corresponda al tipo de Votación, y una marca válida en el área de reconocimiento de marca...".

Empero, y distinto a lo antes esbozado, al definir el voto por nominación directa, el Art. 2.3 (112) del precitado cuerpo de ley se distancia de los requisitos enumerados en otras secciones. Véase, Art. 2.3 (112), Código Electoral de 2020, 16 LPRA sec. 4503 (112). **En particular, la mencionada disposición legal establece que el voto por nominación directa ocurre en las instancias en que el "[e]lector [o electora] escriba el nombre de la persona de su preferencia dentro del encasillado impreso en la Papeleta que corresponda al cargo electivo de su interés en la columna de nominación directa y haga una marca válida dentro del cuadrante correspondiente a ese encasillado".** (Énfasis suplido) *Íd*.

Asimismo, es menester señalar que en la Sec. 5.7.2 de las *Reglas y criterios para la adjudicación manual de papeletas*, cuerpo reglamentario aprobado el 30 de octubre de 2020, se dispone -- en lo relevante a las controversias de marras -- que **"[t]odo nombre, aunque esté mal escrito, en la**

**columna de Nominación Directa o 'Write-In' se adjudicará a favor de la persona indicada para el cargo correspondiente del cuadrante donde se escribió"**. En dicho inciso, también se atiende el asunto de la marca en el recuadro aledaño al nombre, y se expresa que **"para adjudicar el voto al nombre escrito, no será necesario que el elector haga una marca en el rectángulo en blanco al lado del nombre"**.[45] (Énfasis suplido) *Íd.*

Lo anterior, a todas luces, es cónsono con lo recogido en el Art. 10.10 del Código Electoral de 2020, 16 LPRA sec. 4760, donde se reitera que -- durante el proceso de adjudicación de una papeleta -- el criterio rector "que debe prevalecer es respetar la intención del Elector al emitir su voto con marcas válidas que se evaluarán conforme a reglas de adjudicación objetivas y uniformes utilizadas por los sistemas electrónicos de votación o escrutinio utilizados por la Comisión".

Sobre el particular, conviene recordar aquí lo sentenciado por este Tribunal, hace varias décadas, en *Santos v. C.E.E.*, 111 DPR 351 (1981), caso con controversias en extremo similares a las que hoy nos ocupan. En esa instancia, y en ocasión de la contienda electoral por la Alcaldía del Municipio de Aibonito, nos adentramos a evaluar si la entonces Junta Revisora Electoral actuó correctamente

---

[45] En la sección 18.6(b) del *Manual de procedimientos para el escrutinio general y recuento 2020*, aprobado el 10 de noviembre de 2020, se incluyó un texto análogo al anteriormente expuesto.

al ordenar a la Comisión Estatal de Elecciones adjudicar ciertas papeletas a favor del Alcalde incumbente, el señor Francisco "Paco" Santos Vázquez, quien participó en dichos comicios como candidato de nominación directa. *Íd*.

Específicamente, la Junta Revisora Electoral había dispuesto que se debían adjudicar a favor del Alcalde incumbente las papeletas donde apareciera su nombre -- aunque mal escrito -- e independientemente donde estuviese localizado el mismo. *Santos v. C.E.E.*, *supra*. Tal conclusión fue avalada por esta Curia.

Así pues, en el precitado caso, sostuvimos que "ante la preeminencia del derecho al sufragio, es menester apartar[se] de una interpretación literal y rigurosa [de la ley] que plantearía inevitablemente un choque constitucional".[46] *Santos v. C.E.E.*, *supra*, pág. 356. De igual forma, invocamos lo dicho en jurisprudencia anterior, a fin de señalar que, en este tipo de circunstancia, "[l]a medida determinante es si la marca refleja claramente la intención del elector y no el evento fortuito de que la marca fue incorrectamente ubicada". (Cita omitida) *Íd*.

Tal doctrina, entiéndase, esa que busca darle primacía a la intención del elector al momento de contar los votos, fue

---

[46] Recordemos que "[e]l Derecho Electoral concierne los derechos básicos de una democracia y la legitimidad de sus elecciones, lo cual requiere un especial celo en actuar con el mayor cuidado y estudio". H.L. Acevedo, *La democracia puertorriqueña y su sistema electoral*, *Puerto Rico y su gobierno: estructura, retos y dinámicas*, Puerto Rico, Ed. SM, 2016, pág. 297.

reiterada por esta Curia, años más tarde, en *Suárez v. C.E.E. I*, 163 DPR 347 (2004). En dicho caso, este Tribunal validó aquellos votos emitidos en la papeleta estatal durante los comicios celebrados en el año 2004. *Íd*. En particular, aquellos votos que contenían una cruz en la insignia de determinado partido político y una cruz en cada uno de los encasillados correspondientes a los candidatos a los puestos de gobernador y de comisionado residente pertenecientes a otros partidos políticos. *Suárez v. C.E.E. I*, *supra*.

Allí -- por voz del entonces Juez Presidente de este Tribunal, Hon. Federico Hernández Denton -- esta Curia sentenció que:

> **[D]ebe ser norma irreducible la de evaluar [*sic*] [el voto] con el mayor respeto a la voluntad del elector y con el óptimo esfuerzo por salvar su intención si ésta encuentra apoyo en la inteligencia aplicada al examen de la papeleta, obviando inobservancias de índole formal que en el ejercicio de entendimiento razonable no ocultan ni enredan en confusión la verdadera intención del votante.** (Énfasis suplido) (cita omitida) *Íd*. en la pág. 356.

Es, pues, a la luz de la normativa antes expuesta, y no de otra, que -- desde la concurrencia -- procedemos a disponer de las controversias ante nuestra consideración.

### III.

Como mencionamos anteriormente, el señor Ismael "Titi" Rodríguez Ramos, candidato a la Alcaldía de Guánica por el Partido Popular Democrático, ha acudido ante esta Curia -- mediante los correspondientes recursos de certificación

intrajurisdiccional -- solicitando que revoquemos las determinaciones emitidas por el Tribunal de Primera Instancia en los casos de epígrafe. En esencia, éste sostiene que no se deben adjudicar a favor del señor Cruz Vélez las papeletas que contengan votos por nominación directa, cuando las mismas expongan alguna de las variaciones de nombres avaladas por el Presidente de la C.E.E., ni cuando carezcan de una marca válida en el encasillado correspondiente. Esto, en virtud de lo establecido en el Código Electoral del 2020, *supra*, y otros fundamentos. Sus argumentos no nos persuaden.

Y es que, tal como correctamente ha sentenciado este Tribunal en el día de hoy, estos son uno de esos casos donde, a todas luces, procede confirmar los dictámenes del foro primario. **Ello, no sólo por éstos ser correctos en derecho, sino además por éstos ser justos.** Nos explicamos.

Los dictámenes emitidos por el Tribunal de Primera Instancia, de los cuales hoy el candidato a Alcalde de Guánica por el Partido Popular Democrático solicita revisión, fueron decisiones en las que el foro primario, - - en casos donde se pasaba juicio sobre la forma en que se adjudicarían ciertos votos de nominación directa --, acertadamente le dio primacía a la intención del elector por encima de cualquier otra consideración. Máxime cuando, como ya señalamos, lo que el Tribunal de Primera Instancia tenía ante si como fundamento para anular los votos de

determinados puertorriqueños y puertorriqueñas -- argumentos que, de igual forma, se esgrimieron ante nos -- eran consideraciones—que no justificaban la concesión de un remedio en derecho.[47]

**Sobre el particular, basta con señalar que las urnas electorales en nuestro País no están abiertas y accesibles sólo para las personas privilegiadas, sino que, por el contrario -- como mandato constitucional y moral -- el sufragio constituye un recurso para <u>todo</u> el Pueblo y un pilar imprescindible de nuestra democracia. Los errores gramaticales en la redacción de un nombre, la falta de acentos, puntos, comas y/o la ausencia de marcas en las papeletas de determinados guaniqueños y guaniqueñas -- en ocasiones, atribuibles a su nivel de escolaridad, problemática social que, como sabemos, todavía está presente en algunas regiones del País -- no son razón suficiente para anularle su voto por nominación directa. Sobre todo, cuando, de un análisis sosegado de lo que éstos y éstas han escrito, se desprende con meridiana claridad que los mencionados**

---

[47] No podemos olvidar que la Constitución del Estado Libre Asociado es patentemente clara al disponer que **"[n]adie será privado del derecho al voto por no saber leer o escribir o por no poseer propiedad"**. Art. VI, Sec. 4, Const. ELA, LPRA, Tomo 1. A esos fines, esta Curia ha expresado que:

> El evento comicial envuelve a una población que excede el millón y medio de **todo tipo de personas, de las más diversas posiciones sociales y condiciones intelectuales y académicas.** Bajo esa óptica, hemos de recordar la admonición constitucional de que '[n]adie será privado del derecho al voto por no saber leer o escribir....', Art. VI, Sec. 4. (Énfasis suplido) *P.S.P. v. Com. Estatal de Elecciones*, *supra*, pág. 433.

**ciudadanos y ciudadanas están muy claros en lo que aspiran. Eso se llama intención.[48]**

Como cuestión de hecho, tales principios son los que se siguieron en el conteo manual y recuento de ciertos votos del evento electoral que se celebró en el País el pasado 3 de noviembre de 2020, según se deriva de las *Reglas y criterios para la adjudicación manual de papeletas*, *supra*, y el *Manual de procedimientos para el escrutinio general y recuento 2020*, *supra*. No puede, por tanto, haber un tratamiento distinto para este tipo de voto en el escenario ante nuestra consideración.

De otra parte, y más en específico, sobre los votos por nominación directa que no cuenten con una marca dentro del recuadro correspondiente, y la interacción de los ciudadanos y ciudadanas con la máquina de escrutinio, conviene repasar aquí las palabras del Prof. Héctor Luis Acevedo, en su obra *Puerto Rico y su gobierno: estructura, retos y dinámicas*. En particular, éste ha advertido sobre la importancia de tener presente que los sistemas de votación y su correspondiente tecnología deben asistir y facilitar el derecho al voto, no impedirlo. Véase, Acevedo, *op. cit.* Siendo ello así, no se cometieron, pues, los errores señalados.

---

[48] **Es menester recalcar que, al escribir el nombre del señor Cruz Vélez, los guaniqueños y las guaniqueñas evidenciaron su intención. Dicho ejercicio es más diáfano y directo que cualquier marca en determinado encasillado.**

Recordemos que, -- en nuestra jurisdicción --, al determinar la validez de un voto, "debe ser norma irreducible la de evaluarlo con el mayor respeto a la voluntad del elector y con el óptimo esfuerzo por salvar su intención si ésta encuentra apoyo en la inteligencia aplicada al examen de la papeleta, obviando inobservancias de índole formal que en el ejercicio de entendimiento razonable no ocultan ni enredan en confusión la verdadera intención del votante". *Suárez v. C.E.E. I*, *supra*, pág. 356 (citando a *P.S.P. v. Com. Estatal de Elecciones*, *supra*, pág. 460). Ese es el ejercicio que el juez que suscribe ha hecho en el día de hoy.

Procede, pues, como lo ha determinado este Tribunal que, en el conteo de votos relacionado con la contienda electoral a la posición de Alcalde en el Municipio se Guánica, se sigan los lineamientos contemplamos en la *Resolución CEE-AC-20-546* emitida por el Presidente de la C.E.E., la cual fue avalada por el foro primario y hoy se impugna. En ella, se valida firmemente la intención del elector o electora al reconocer las variantes de nombres asociadas al candidato por nominación directa, el señor Edgardo Cruz Vélez.

Ahora bien, en lo relativo a la *Resolución CEE-AC-20-547* -- la cual limita injustificablemente la intención del elector o electora al considerar no adjudicables los votos por nominación directa que no cuenten con una marca dentro

del recuadro correspondiente -- entendemos que el Tribunal de Primera Instancia actuó apropiadamente, y, como consecuencia, procede contar los votos de nominación directa sin marcas en el cuadrante de referencia, pero que incluyan el nombre de la persona nominada. Ello, aún si interactuaron con la máquina de escrutinio.

IV.

Es, pues, por los fundamentos antes expuestos que concurrimos con lo resuelto por una mayoría de este Tribunal en los casos de marras.


Ángel Colón Pérez
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Ismael "Titi" Rodríguez Ramos, como Candidato a la Alcaldía de Guánica por el Partido Popular Democrático, Precinto 048 de Guánica<br><br>Peticionario<br><br>v.<br><br>Comisión Estatal de Elecciones, a través de su Presidente, Hon. Francisco J. Rosado Colomer; Roberto Iván Aponte Berríos, como Comisionado Electoral del Partido Independentista Puertorriqueño; Héctor J. Sánchez Álvarez, como Comisionado Electoral del Partido Nuevo Progresista; Gerardo A. Cruz Maldonado, como Comisionado Electoral del Partido Popular Democrático; Juan Manuel Frontera Suau, como Comisionado Electoral del Partido Proyecto Dignidad; Olvin Valentín Rivera, como Comisionado Electoral del Partido Movimiento Victoria Ciudadana; María J. Ruiz Ramos candidata a alcaldesa de Guánica por el Partido Independentista Puertorriqueño; Santos "Papichy" Seda Nazario candidato a alcalde de Guánica por el Partido Nuevo Progresista; y Edgardo Cruz, ciudadano que promovió su nombre por nominación directa<br><br>Recurridos | CT-2021-1<br><br>cons. con<br><br>CT-2021-2 | Certificación Intrajurisdiccional |
| Edgardo Cruz Vélez, como candidato a la Alcaldía del Municipio de Guánica bajo la | | |

modalidad de nominación directa

Recurrido

v.

Ismael "Titi" Rodríguez Ramos, Candidato a la Alcaldía de Guánica por el Partido Popular Democrático

Peticionario

Comisión Estatal de Elecciones, representada por su presidente, Francisco Rosado Colomer; Roberto Iván Aponte Berríos, como Comisionado Electoral del Partido Independentista Puertorriqueño; Olvin Valentín, como Comisionado Electoral del Movimiento Victoria Ciudadana; Gerardo A. Cruz Maldonado, como Comisionado Electoral del Partido Popular Democrático; Edwardo García Rexach, como Comisionado Electoral del Proyecto Dignidad; Héctor J. Sánchez Álvarez, Comisionado Electoral del Partido Nuevo Progresista, María J. Ruiz Ramos, candidata a la alcaldía de Guánica por el PIP y Santos Seda Nazario, candidato a alcalde de Guánica por el PNP

Recurridos

Opinión disidente emitida por el Juez Asociado señor MARTÍNEZ TORRES

En San Juan, Puerto Rico, a 12 de enero de 2021.

Debimos proveer no ha lugar a las certificaciones intrajurisdiccionales de ambas controversias, sin más.

Como entramos a ver estos casos en esta etapa, disiento de la Opinión del Tribunal. Lo que en realidad se hace en estos recursos es impugnar la elección para Alcalde de Guánica. Por lo tanto, el peticionario debía cumplir con el Art. 10.15 del Código Electoral de 2020, infra, que dispone que la acción de impugnación de la elección de un aspirante nace una vez concluido el escrutinio y una vez la Comisión Estatal de Elecciones emita la certificación de elección del candidato que prevaleció en la contienda, según lo dispuesto en el Art. 10.11 del Código Electoral de 2020, infra. Por lo tanto, cualquier expresión nuestra sobre esta controversia sin que se haya seguido ese procedimiento es a destiempo.

I

Las controversias en estos casos tratan de cómo se adjudicarán los votos de la elección para Alcalde de Guánica. El peticionario en este caso impugnó la adjudicación de ciertos votos que cree son contrarios a la ley. Para impugnarlos, el peticionario debía cumplir con el Art. 10.15 de la Ley Núm. 58-2020, conocida como el Código Electoral de Puerto Rico de 2020, 16 LPRA sec. 4765 (Código Electoral de 2020). Este dispone que la acción de impugnación de la elección de un candidato nace una vez concluido el escrutinio y una vez la Comisión emita la certificación de elección del candidato que prevalece en la contienda, según se dispone en el Art. 10.11 del Código Electoral de 2020, 16 LPRA sec. 4761. Es conforme con esto que el aspirante afectado tendrá la

oportunidad de exponer bajo juramento las razones de su impugnación, "que deberán ser de tal naturaleza que, de probarse, bastarían para cambiar el resultado de la elección". Art. 10.15 del Código Electoral de 2020, supra. Los recursos presentados eluden todo esto.

En específico, el Art. 10.15 del Código Electoral de 2020, supra, dispone:

> Cualquier Candidato que impugnare la elección de otro, deberá presentar ante el Juez en la Sala de la Región Judicial de San Juan designada de conformidad con el Capítulo XIII de esta Ley, y **dentro de los diez (10) días siguientes a la fecha de notificación de la certificación de elección para cada cargo público electivo en el escrutinio general,** un escrito, exponiendo bajo juramento las **razones en que fundamenta su impugnación, las que deberán ser de tal naturaleza que, de probarse, bastarían para cambiar el resultado de la elección.** (Énfasis suplido).

Por su parte, el Art. 10.11 del Código Electoral de 2020, supra, regula lo concerniente a la certificación final del candidato ganador de la elección. El citado artículo dispone lo siguiente:

> **La Comisión declarará y certificará electo para cada cargo al Candidato que reciba la mayor cantidad de votos válidos y directos.** Como constancia de ello, expedirá un certificado de elección que será entregado al candidato electo una vez acredite que ha tomado el Curso sobre Uso de Fondos y Propiedad Pública y haya hecho entrega de su Estado de Situación Financiera Revisado. Se exceptúa al legislador municipal del último requisito. (Énfasis suplido).

Como vemos, la ley provee un mecanismo específico para este tipo de controversias: impugnar la elección una vez se

certifique un ganador. Estos casos no son una impugnación de esa elección. Por lo tanto, cualquier revisión judicial en la que un candidato pretenda impugnar los resultados de la elección, está a destiempo. Esa intervención solo se la hemos permitido en el pasado a electores, no candidatos, que recurren de una decisión de la CEE sobre la corrección de ciertos votos. Suárez v. CEE I, 163 DPR 347 (2004). Estos electores no tenían otro recurso disponible; los candidatos sí: el Art. 10.15 del Código Electoral de 2020, supra.

En este caso, el peticionario no especificó la cantidad de votos que está impugnando. Además, se desconoce el efecto de esto —si alguno— en el escrutinio de Guánica y nada en el expediente arroja luz sobre esto. Se abre entonces una puerta, de par en par, para impugnaciones múltiples -de manera preventiva- de adjudicaciones de votos, una vez la CEE emita una instrucción -por Resolución- de cómo adjudicar votos. Eso va en contra del mecanismo que dispuso el legislador y solo logrará inundar los tribunales de controversias abstractas sobre cómo adjudicar votos, "por si acaso". Se buscó la manera de emitir opiniones consultivas. Prepárense ahora para la avalancha de casos como este en el próximo ciclo electoral.

La certificación intrajurisdiccional es un recurso de carácter extraordinario y discrecional. UPR v. Laborde Torres y otros, 180 DPR 253, 272 (2010). De hecho, la certificación intrajurisdiccional solo se expide luego de auscultar la etapa procesal en que se encuentra el caso. Véase, Rivera Schatz v.

ELA y C. Abo. PR II, 191 DPR 791, 849 (2014). Por consiguiente, al ejercer nuestra discreción para autorizar una certificación intrajurisdiccional, debemos considerar: (1) la urgencia, (2) la etapa en que se encuentran los procedimientos, (3) la necesidad que puede presentarse de recibir prueba y (4) la complejidad de la controversia. Pierluisi-Urrutia et al. v. CEE et al., 2020 TSPR 82, 204 DPR ____ (2020).

En este caso no existía una urgencia que ameritara nuestra intervención inmediata. En ausencia de un recurso de impugnación de la elección no es posible hablar de esa urgencia. Tampoco se trata de un asunto complejo, donde haya confusión que amerite nuestra intervención para pautar. Eso se desprende de la Opinión de este Tribunal, que reitera precedentes de cuya aplicación nadie dudaba. No hacía falta la intervención de este Tribunal en este momento.

Además, por sí solo, el alto interés público de una controversia no es justificación suficiente para prescindir del mecanismo específico que establece el Código Electoral de 2020 para estas situaciones. En vista de ello, lo correcto era permitir que el trámite continuara en los foros inferiores.

Hoy estamos adjudicando planteamientos relacionados con la adjudicación de votos en una elección que nadie ha impugnado. Como resultado de esto, mediante una opinión consultiva, hemos adelantado el criterio de este Tribunal antes de que algún aspirante impugnara la elección. Según el

Código Electoral de 2020, el peticionario debía demostrar que los votos en disputa alterarían el resultado de la elección. Precisamente lo que se buscaba mediante estos recursos era eludir ese requisito y lo lograron. Nada justificaba certificar estas controversias que, al parecer, de lo que realmente tratan es de un candidato que –"por si acaso"- impugnó la elección en la que eventualmente resultó ganador. Esto solamente pasa en Puerto Rico.

## II

Por estas razones, disiento respetuosamente de la decisión del Tribunal.


RAFAEL L. MARTÍNEZ TORRES
Juez Asociado